**Arthur G. CASTANEDA, Appellant–Respondent,**

v.

**Nancy R. CASTANEDA, Appellee–Petitioner.**

**No. 45A03–9208–CV–260.**

Court of Appeals of Indiana, Third District.

June 15, 1993.

James A. Greco, Merrillville, for appellant-respondent.

Jo Anne Tapocsi–Lohmeyer, Valparaiso, for appellee-petitioner.

GARRARD, Judge.

This is an appeal from a division of marital property pursuant to a dissolution.

FACTS AND PROCEDURAL HISTORY:

Nancy and Arthur Castaneda were married on October 14, 1978. During the marriage they had three children, Audrey, born May 23, 1983, Eric, born April 16, 1985, and Elaine, born July 6, 1987. During the first years of their marriage Nancy worked full time as a medical technician. After the birth of their first child, Nancy began working part-time and remains employed in a part-time capacity to this date.

In February 1982, four years after the parties were married, Nancy's father died leaving her an interest in his real estate and life insurance proceeds. Arthur was not a beneficiary to this inheritance. Nancy deposited the sums received from her father into two certificates of deposit in her name and never co-mingled these accounts with other funds brought into the marriage. Over the course of 10 years the

accounts received high interest rates and were worth $111,762.30 at the time of the dissolution hearing.

On January 28, 1991, Nancy filed a petition for dissolution of her marriage to Arthur alleging irretrievable breakdown in the marriage. Trial was set for March 19, 1992. At trial both parties presented evidence on how Nancy's inheritance should be divided. Arthur asked to split it according to the statutory fifty/fifty presumption. Nancy requested that these sums be set aside for her. The trial court agreed with Nancy and found that the inheritance was Nancy's individual property, should be awarded to her, and should not be considered marital assets for purposes of dividing the marital estate. The trial court also ordered Arthur to pay the sum of $271.00 every week for the support of the parties' minor children.

ISSUES:

Arthur presents three issues for appeal which we restate as follows:

I.  Whether the trial court properly included Nancy Castaneda's inheritance in the "marital pot" to be divided by the trial court.

II. Whether the trial court abused its discretion in setting aside for Nancy the inheritance given to her by her father when it divided the marital assets.

III. Whether the trial court abused its discretion when it did not include the difference between Nancy's part-time salary and the salary that she would make if she were working full time, when it fashioned its child support order.

DISCUSSION:

Issue I:

■ Arthur first contends that the trial court did not include Nancy's inheritance in the "marital pot" to be divided by the trial court. We disagree.

■ IC 31-1-11.5-11(b) provides that "the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either

spouse in his or her own right after the marriage and prior to the final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner ...." IC 31-1-11.5-2(d) defines "property" as "all the assets of either party or both parties ..." Regardless of its source, therefore, property owned by the parties, including property acquired by inheritance, shall be included in the marital assets and placed within the trial court's authority to divide the assets. *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, 646. The sums acquired by Nancy through the inheritance left by her father were, therefore, required to be included in the marital pot and available for division by the trial court.

After reviewing the record in this case we are convinced that the trial court did not err.

During two pre-trial conferences, both parties expressly agreed that the sums derived from Nancy's inheritance should be included in the divisible pot. The only contention at that time was whether the trial court would set aside these sums for Nancy when it made its order dividing the property. Furthermore, no change in this posture was made at the formal hearing held on March 19, 1992. Indeed counsel for both parties indicated that all concerned considered Nancy's inheritance part of the divisible assets. They disagreed, of course, on how they thought the trial court ought to divide these amounts.

■ To bolster his argument that the trial court nevertheless excluded the inheritance from the marital pot, Arthur points to language in the trial court's order that he says indicates that the trial court excluded the inheritance. These passages read as follows:

> Petitioner [Nancy] never co-mingled said funds with marital assets nor did she treat these funds as part of the marital pot ...
> [The inheritance is] Petitioner's individual property, and should be awarded to her and should not be considered marital assets for purposes of dividing the marital estate. (R. 258).

We note that these statements were made following a portion of the trial court's order that listed the inheritance with other items of personal property acquired during the course of the marriage. Rather than a declaration of exclusion, these statements were part of the trial court's order describing the court's reasons for awarding these sums to Nancy. While the court may have misspoken in the last sentence, there is no indication that the trial court or the parties departed from their previous understanding concerning the inheritance. As a general rule we presume that the trial court followed the law and made all the proper considerations in making its decision. *White v. White* (1981), Ind.App., 425 N.E.2d 726, 728. In light of the whole record and without stronger evidence that would lead us to a different conclusion, we decline Arthur's invitation to read these passages as excluding the inheritance from the pot.

Issue II:

Arthur next contends that the trial court abused its discretion in setting aside for Nancy the inheritance given to her by her father in determining the division of marital assets in this case. We disagree.

The division of marital assets is governed by IC 31–1–11.5–11(c) which provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstance of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

Traditionally, the division of marital assets has been a matter within the sound discretion of the trial court. *Davidson, supra* at 645. This discretion, however, is subject to the provisions set out above. *Id.* We may not reweigh the evidence or assess the credibility of witnesses and we consider only the evidence most favorable to the trial court's disposition. *Id.* Reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

We also note that IC 31–1–11.5–11(c) imposes a presumption that an equal division of the property is just and reasonable. *Id.* The trial court may deviate from this presumption, however, when a party presents evidence rebutting this presumption. *Id.* IC 31–1–11.5–11(c) specifically mentions property acquired by inheritance as a factor to be considered. *Id.* at 646. So long as the trial court determines that a party opposing an equal division has met his or her burden under the statute and adequately records its reasons, based on the evidence, for an unequal division, we will affirm the trial court's decision. *Id.*

In this case, Nancy introduced evidence, reflected in the trial court's decision, that the inheritance was kept in Nancy's name and that Arthur did nothing to contribute to the accumulation of these funds. The trial court also found that the funds consisting of the inheritance were never comingled with other assets brought into the marriage and that Nancy did not treat them as marital property. These findings satisfy several factors outlined in IC 31–1–11.5–11(c) and we cannot, therefore, say that the trial court abused its discretion in

setting aside these funds for Nancy as it divided the property. The party challenging the trial court's division in cases like these must overcome a strong presumption that the court complied with the statute. *Nill v. Nill* (1992), Ind.App., 584 N.E.2d 602, 604, *trans. denied.* Arthur has not done so in this case.

Issue III:

 Finally, Arthur asserts that the trial court abused its discretion when it failed to compute Arthur's child support obligation using Nancy's potential earnings as a full time employee. Again, we disagree.

Support Guideline 3(A)(3) provides that where a parent is voluntarily unemployed or underemployed the court shall calculate support based upon a determination of potential income. *Matter of Paternity of Buehler* (1991), Ind.App., 576 N.E.2d 1354, 1355. Potential income is to be determined upon the basis of the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community. *Id.*

The guidelines, however, while designed to discourage a parent from taking a lower paying job or choosing to be unemployed in order to avoid paying support, is not designed to be used as a tool to promote a society where all work to their full economic potential. *Id.* at 1356. Support Guideline 1 declares that the Income Shares Model upon which the guidelines are based, is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together. *Id.* It is not our function here to approve or disapprove of the lifestyle of these parties or their career choices and the means by which they discharge their obligations in general. *Id.*

In this case, Nancy began to work on a part-time basis after the birth of their first child. She has continued in that position since that time and stated that she would remain as a part-time employee until their youngest child started school. It is readily evident from this testimony and other evidence in the record that the parties' finan-

cial positions were the same at the time of the hearing as they were for the years prior to the divorce. There was, therefore, no basis for the trial court to determine that Nancy was underemployed for the purpose of determining Arthur's support obligation. *Id.* The trial court was correct in not so finding.

For the foregoing reasons, the judgment of the trial court is affirmed.

STATON and BAKER, JJ., concur.