**In re the Marriage of Rose FOBAR (Vonderahe), Appellant–Respondent,**

v.

**Anthony M. VONDERAHE, Appellee–Petitioner.**

**No. 34A05–0101–CV–2.**

Court of Appeals of Indiana.

Sept. 26, 2001.

---

Mark Small, Indianapolis, IN, Attorney for Appellant.

Scott P. Sullivan, Noel & Noel, Kokomo, IN, Attorney for Appellee.

**OPINION**

BARNES, Judge.

### Case Summary

Rose Fobar appeals the trial court's decree dissolving her marriage to Anthony Vonderahe, which also divided the parties' property and awarded attorney fees to Vonderahe. We affirm in part and remand in part.

### Issues

We restate the issues presented as:

I. whether the divorce decree is void due to a jurisdictional defect caused by the trial court's failure to strictly comply with Howard County Local Rule 16(B), which requires the filing of financial disclosure forms by the parties to a dissolution proceeding;

II. whether the findings and conclusions support the trial court's award of attorney fees to Vonderahe; and

III. whether the trial court erred in its distribution of the parties' property.

### Facts

The parties were married on December 30, 1983, and Vonderahe filed his dissolution petition on April 23, 1999. The parties had no biological children of their

own, but Fobar had a daughter by her previous husband, who was killed in an automobile accident approximately one month before the daughter's birth. Fobar and her daughter received a monetary settlement related to her husband's death. The daughter also received social security benefits because of her father's death; the amount of these payments during Fobar's marriage to Vonderahe were approximately $100,000, and the daughter also had a guardianship fund set up after her father's death that had a value of approximately $25,000. Fobar testified that much of this $125,000 was spent on general living expenses. The trial court began conducting a final hearing on September 25, 2000, without either party's filing a financial disclosure form as was required at the time by a Howard County trial rule. Apparently, no mention of this rule was made during the course of the hearing. On December 13, 2000, the trial court entered written findings and conclusions, in accordance with Fobar's request. It found marital assets totaling $555,831 and marital liabilities totaling $66,072. Vonderahe received $248,355 in total assets minus liabilities, including the marital residence subject to a mortgage. Fobar received $241,404 in total assets minus liabilities, including two residences producing a total of $810 per month in rent, a parcel of land she inherited from her late husband, and four horses and two automobiles she claimed her daughter owned. The trial court also ordered Fobar to pay $5,000 of Vonderahe's attorney fees. Fobar now appeals.

## I. Howard County Local Trial Rule 16(B)(4)

Fobar's first claim is that the decree of dissolution is void because the trial court proceeded to hear and enter judgment in this case without the parties filing financial disclosure forms or filing a waiver of that requirement, in alleged contravention of Howard County Local Trial Rule 16(B)(4) and our opinion in *Buckalew v. Buckalew*, 744 N.E.2d 504 (Ind.Ct.App.2001). However, our supreme court granted transfer to consider *Buckalew*, and it recently issued an opinion reaching a result contrary to ours.

 Howard County Local Rule 16(B) stated in part:

1. In order ... to insure complete, uniform and reciprocal disclosure of income, property, and assets, each party to an action for divorce or separation shall cause to be filed with the Court in which the action is pending, an Income and Property Disclosure Form which shall be from time to time designated and approved by the Howard County Courts....

 \* \* \* \* \* \*

4. No final hearing may be scheduled and no decree of dissolution of marriage or legal separation shall be entered unless and until the prescribed disclosure form is filed with the Court, except in cases where the parties are each represented by separate counsel and file with the court a waiver of such requirement.

Once a court promulgates a rule, it and all litigants are generally bound by the rule. *Meredith v. State*, 679 N.E.2d 1309, 1311 (Ind.1997). However, a court may set aside its own rule if it assures itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule. *Id.* Rules that are jurisdictional, defined as those that set time limitations or other requirements that must be met before the court may hear the case, are generally mandatory and not directive. *Id.* at n. 2. Our supreme court has now held that Howard County Local Rule

16(B)(4) is not mandatory in the jurisdictional sense. *Buckalew v. Buckalew,* 754 N.E.2d 896, 898 (Ind.2001). Thus, although the trial court was required to comply with the rule, any failure to do so did not render its subsequent action void. *Id.* Rather, any error related to not strictly complying with the rule could be presented on appeal only if a specific and timely objection was made. *Id.* Here, no such objection was made.[1] Fobar was represented at the final hearing by counsel who did not insist on the filing of financial disclosure forms, and therefore any failure to strictly comply with Howard County Local Rule 16(B)(4) does not require the dissolution decree to be vacated. *Id.*

## II. Attorney Fees

█ When reviewing an award of attorney fees in connection with a dissolution decree, we reverse the trial court only for an abuse of discretion. *In re Marriage of Pulley,* 652 N.E.2d 528, 532 (Ind.Ct.App. 1995), *trans. denied.* In making such an award, courts should consider the parties' relative resources, ability to engage in gainful employment, and ability to earn an adequate income. *Id.* Consideration of these factors furthers the legislative purpose behind the award of costs and attorney fees under Indiana Code Section 31–15–10–1, which is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. *See Beeson v. Christian,* 594 N.E.2d 441, 443 (Ind.1992). Apart from the purpose of equalizing the parties' respective positions, however, misconduct that directly results in additional litigation expenses may also properly be taken into

account in the trial court's decision to award attorney fees in dissolution proceedings. *Glover v. Torrence,* 723 N.E.2d 924, 938 (Ind.Ct.App.2000). The trial court's findings indicate that it awarded fees based upon Fobar's alleged litigation misconduct, not out of concern for equalizing the parties by ensuring that both would have access to an attorney's services, and so we will examine whether the trial court's finding that "the conduct of Wife during the course of this litigation, particularly during discovery and trial" supports the attorney fees award on that basis. Record p. 137.

█ Vonderahe's brief contains no argument to support the trial court's implicit finding that Fobar engaged in misconduct during the discovery phase of the litigation, and so he has essentially conceded that she did not engage in misconduct at that time. *See* Former Ind. Appellate Rule 8.3(A)(7). We are persuaded by Fobar's argument that she did not engage in discovery misconduct to the extent she simply insisted that no discovery take place until Vonderahe filed a financial disclosure form, which filing was apparently a prerequisite to discovery taking place in Howard County dissolution actions pursuant to Local Rule 16(B)(2).

█ We believe the remainder of the finding regarding attorney fees presently to be insufficient. Although it is generally true that a court need not list specific reasons for awarding attorney fees in a dissolution action, *see Pulley,* 652 N.E.2d at 532, that general rule should not be applicable when one party has specifically requested findings and conclusions under

---

1. We do not believe the insistence of one of Fobar's former attorneys on compliance with Local Rule 16(B)(2), which apparently only purports to limit discovery until after financial disclosure forms are filed, was sufficient to avoid waiver of strict compliance with Rule

16(B)(4). Fobar's subsequent attorneys, including the one who represented her at the final hearing, apparently never made mention of Local Rule 16 at all and seem to have abandoned insisting on strict compliance with it.

Trial Rule 52. Neither *Pulley* nor *Crowe v. Crowe*, 555 N.E.2d 180, 183 (Ind.Ct.App. 1990), where the general rule is also stated, were cases in which findings and conclusions were requested. The Indiana Rules of Trial Procedure apply in dissolution proceedings. Ind.Code § 31–15–3–1. When properly requested, a trial court is required to make complete special findings sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. *Justus v. Justus*, 581 N.E.2d 1265, 1269 (Ind.Ct.App.1991), *trans. denied*. The purpose of findings of fact and conclusions of law is to provide the parties and reviewing courts with the theory upon which the case was decided. *F.E.H., Jr. v. State*, 715 N.E.2d 1272, 1275 (Ind.Ct.App.1999). We do not believe the sole reference to Fobar's "conduct" during the course of litigation is sufficiently complete to support the attorney fees award. We thus remand to the trial court for reconsideration of this issue and, if appropriate after such reconsideration, the entry of more complete findings that specifically identify instances of "misconduct" that directly resulted in increased litigation expense to Vonderahe.

### III. Property Division/Inclusion of Assets in Marital Estate

Fobar's argument regarding the trial court's division of property is essentially three-fold: first, that it erred in awarding the marital residence to Vonderahe; second, that it improperly included property allegedly owned by Fobar's daughter, Robyn, as marital property that was subject to division and distribution; and third, that she rebutted the presumption in favor of an equal division of property and should have received approximately sixty percent of the marital estate.

■■■■ The trial court in this case entered findings of fact and conclusions of law upon Fobar's request, and so we apply a two-tiered standard to review the court's entry. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Oil Supply Co., Inc. v. Hires Parts Service, Inc.*, 726 N.E.2d 246, 248 (Ind. 2000). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Challengers must establish that the trial court's findings are clearly erroneous. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. *Carnahan v. Moriah Property Owners Ass'n, Inc.*, 716 N.E.2d 437, 443 (Ind.1999).

■■■■ We also apply a strict standard of review to a court's distribution of property upon dissolution. *Wilson v. Wilson*, 732 N.E.2d 841, 844 (Ind.Ct.App.2000), *trans. denied*. Subject to the statutory presumption that an equal distribution of assets is just and reasonable, the division of marital property is committed to the sound discretion of the trial court. *Pitman v. Pitman*, 721 N.E.2d 260, 264 (Ind. Ct.App.1999), *trans. denied*. The party challenging the trial court's property division bears the burden of proof. *Wilson*, 732 N.E.2d at 844. That party must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *Id.* We will reverse a property distribution only if there is no rational basis for the award. *Id.* Although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court. *Id.*

## A. Marital Residence

 Fobar claims she is entitled to possession of the marital residence because (1) she testified that she paid for one-fourth of the real property on which it is located with money from a settlement reached in an action related to the wrongful death of her previous husband; (2) she and her daughter enjoyed engaging in recreational activities on the property, including the raising of horses; and (3) she and her daughter made improvements to. the landscaping of the property. Arguably, these circumstances might support awarding the marital residence to Fobar, but these facts are not enough to warrant reversal of the trial court's granting of the residence to Vonderahe. We will not substitute our judgment for that of the trial court, and there are competing circumstances that support the award of the residence to Vonderahe.

 For instance, even assuming that Fobar paid for one-fourth of the cost of the real property with money she brought into the marriage, (although the documentation presented to support this claim was less than clear), there is no evidence of how the other three-fourths of the cost was tendered, nor how the residence itself (which was purchased and constructed later) was paid for. Also, we note that "[t]he income-producing efforts and intangible contributions of both spouses unite to facilitate the acquisition of marital property." *Maloblocki v. Maloblocki*, 646 N.E.2d 358, 363 (Ind.Ct.App.1995). One party's contribution of a greater share of funds to the marriage does not necessarily mean that he or she made a larger contribution to the acquisition of the marital property. *Id.* Vonderahe and his sister

presented testimony indicating that as between him and Fobar, he performed more of the maintenance on the property. Fobar might dispute the weight of this testimony, but it was for the trial court to weigh evidence and judge the credibility of witnesses. Finally, the marital residence had a certain intangible value to Vonderahe that counterbalances Fobar's intangible interest in the property's recreational aspects, in that the property was bordered on two sides by property owned by Vonderahe's sister and her husband. He understandably wished to remain close to them. The trial court did not abuse its discretion in weighing these competing interests and circumstances and concluding that Vonderahe should have possession of the marital residence.

## B. Property Allegedly Belonging to Daughter

Pursuant to Indiana Code Section 31–15–7–4, a trial court must divide the property "of the parties" when dissolving a marriage. Fobar claims that the trial court improperly included certain items of property as part of the divisible marital estate, namely four horses, two automobiles, and a parcel of real estate. She claims the first two categories of items were owned solely by her daughter and were paid for exclusively with her daughter's social security money, and that the real estate was one-half her daughter's and the other half was inherited property of Fobar's that was never commingled with other marital property.[2]

 The trial court was presented with conflicting evidence on the ownership of the horses. Fobar testified that they were paid for with her daughter's social security

**2.** We observe that Fobar actually was awarded the property in question here, so her argument is not against how the trial court divided this property, but that it was subject to division at all and therefore the total value of the marital estate was increased because of its inclusion, resulting in a higher award of other property to Vonderahe.

money, but there is scant documentary evidence to support that claim. Fobar and her daughter also testified that they always considered the horses to be the daughter's. On the other hand, certificates of registration for two of the horses from the American Quarter Horse Association indicate that they were titled in Fobar's name until April 1999, when they were transferred to her daughter's name upon advice of Fobar's counsel, just prior to Vonderahe's filing for divorce and while the parties were attempting to negotiate a divorce property settlement. There was also evidence that Fobar attempted to sell one of these horses and two fillies in April 2000, listing herself as consignor. Fobar proffered explanations for these titling and consignment arrangements, but the trial court was not required to accept them. Fobar also identified one of the horses depicted in a photograph exhibit as "my horse." Record p. 300. Finally, Vonderahe testified regarding the horses that "[s]he [the daughter] never really liked to do it 'cause she always had other fun things to do but her mother always seen to it that she was involved, whether she wanted to be or not." Record p. 596. In light of this conflicting evidence regarding the horses' true owner(s), the trial court did not clearly err by including them as marital property subject to division and distribution.

In 1997, a Pontiac Sunfire was acquired, the financing of which creates considerable confusion as to who owns it. The full amount of the purchase price of this vehicle was financed. The GMAC Financial Services contract is signed only by Fobar. Fobar's exhibit BB, which sets forth a proposed property distribution, lists the entire outstanding amount of the Sunfire

debt as a marital debt. However, only one-half of the Sunfire's value is listed as a marital asset. Fobar attempted to explain this discrepancy by testifying and providing documentation that her daughter paid her $7,000 contemporaneously with the Sunfire purchase, which she considered one-half of the car's purchase price. Thus, Fobar effectively said, one-half of the Sunfire belonged to her daughter, even though that $7,000 was not immediately used to pay for one-half of the car and Fobar elected to finance the entire amount of the purchase. This testimony did not require the trial court to find that the daughter had a one-half interest in the Sunfire, and it was perfectly logical for it to conclude that if the full amount of the debt secured by the car is a marital debt, as proposed by Fobar, the car's full value must be included as a marital asset as well.

The 1999 Volkswagen Jetta presents the most difficult ownership question. A $14,000 down payment was made on this car, with a personal check from Fobar. The purchase contract was signed solely by Fobar.[3] On the other hand, there is documentation of a $14,500 withdrawal from the daughter's savings account and a deposit in Fobar's checking account in that amount on the same day. The vehicle's registration is in Fobar's and her daughter's name jointly. Fobar's exhibit BB does not list the outstanding debt on this vehicle as a marital debt. Thus, the extent of Fobar's ownership interest in the Jetta is even more confused than that of the Sunfire. Ultimately, however, even if we were to conclude the trial court clearly erred by including the *full* value of the Jetta as a marital asset, such error would have been harmless and would not require reversal. It is clear from the evidence that Fobar

---

**3.** Fobar's daughter was twenty when this contract was entered into, and was eighteen when the Sunfire was purchased.

has some claim to an interest in the vehicle; not only did she sign the purchase contract by herself, she also cosigned the financing agreement for the remainder of the purchase price and is included on the vehicle's registration. Although it is true that in a dissolution proceeding a trial court may not award property that is not owned by the parties, Fobar's interest in the vehicle could be considered by the court in determining a just and reasonable distribution of the total assets. *See Moore v. Moore,* 482 N.E.2d 1176, 1179 (Ind.Ct. App.1985).

▮ Finally, Fobar apparently argues that a parcel of real estate in Buffalo, Indiana that she inherited when her first husband died should not have been included in the marital estate because the property was never commingled in any way with other assets. We disagree. Indiana Code Section 31–15–7–4 clearly states that the trial court shall "divide the property of the parties, whether: (1) owned by either spouse before the marriage. . . ." Thus, *all* property, whether acquired before or during the marriage, is generally included in the marital estate for property division. *Bertholet v. Bertholet,* 725 N.E.2d 487, 495 (Ind.Ct.App.2000), *trans. denied.* Additionally, there is no requirement that assets of individual origin must have been physically "commingled" during the marriage to be considered as marital property. *Huber v. Huber,* 586 N.E.2d 887, 889 (Ind. Ct.App.1992), *trans. denied.* Fobar's interest in the Buffalo property was clearly a marital asset subject to distribution. Her assertion that her daughter held a one-half interest in the property appears to be correct, but the trial court expressly took this into consideration and only included one-half of the value of the property in the marital "pot."

### C. Total Distribution of Property

By our calculations, the trial court awarded 50.7% of the total value of what it considered the marital estate to Vonderahe, and 49.3% of its value to Fobar—a virtually equal division of property. Without documenting how she arrived at these numbers, Fobar claims the property should have been divided 60.9% to 39.1% in her favor primarily because she brought more assets into the marriage, largely from money and property she acquired after her first husband's death. We conclude, with one exception, that the trial court did not abuse its discretion.

Indiana Code Section 31–15–7–5 creates the presumption that an equal division of marital property between the parties is just and reasonable. Because Fobar sought to receive more than half of the property, it was her burden to rebut this presumption. *Chase v. Chase,* 690 N.E.2d 753, 756 (Ind.Ct.App.1998). Also, although Section 31–15–7–5(2) provides that a court may consider the extent to which property was acquired by one spouse through inheritance or gift or before the marriage, "there is nothing in this statute which suggests that the trial court must deviate from the traditional 50/50 split simply because one party presents evidence that he or she owned certain assets prior to marriage." *Bertholet,* 725 N.E.2d at 495.

▮ At trial, Fobar presented a demonstrative exhibit purporting to show that she brought funds and assets into the marriage totaling $99,500, while Vonderahe brought in funds and assets totaling only $10,000. The trial court did find that "Wife probably had more net worth at the time of the marriage," but also that "the evidence was conflicting on values." Record p. 135. Thus, it did not completely accept Fobar's exhibit, and the record supports this determination. First, the exhibit listed a bank account for Fobar with a

balance of $18,000 at the time of marriage. However, when cross-examined, Fobar could present no documentary evidence to support this claim or that the account even existed. Second, the exhibit places a $5,000 value on Vonderahe's equity in property located at 113 South Sycamore in Galveston, Indiana, which reflects that Vonderahe had paid $5,000 toward the property as of the time of the marriage, in 1983. By contrast, the exhibit places a value of $64,000 on Fobar's interest in the property located at 116 East Jackson in Galveston, which she owned debt-free at the time of marriage; this value is based on an appraisal conducted in September 2000. Almost certainly, $5,000 in equity in 1983 would be worth much more today, and $64,000 in equity today would have been worth less in 1983. The discrepancy in the parties' net worth at the time of marriage is thus grossly overstated by Fobar's exhibit; to be accurate, it should have placed a value on the 116 East Jackson property as of 1983, or vice versa. The 116 East Jackson property was also used as a marital residence for several years, during which time Vonderahe performed routine maintenance there and added a new roof, thereby contributing to the property's appreciation in value.

Fobar also claims she is entitled to more property because she apparently earned more income during the course of the marriage. Evidence was presented that Fobar earned an average of $37,435 per year for the four years before the parties separated, and Vonderahe earned an average of $26,617 during the same time period.[4] However, we have already observed that one party's contribution of a greater share of funds to the marriage does not necessarily mean that he or she

made a larger contribution to the acquisition of the marital property. *Maloblocki,* 646 N.E.2d at 363. In fact, when the trial court divided the marital property it expressly considered the substantial discrepancy in the parties' earnings, which would increase after the dissolution decree was entered because Fobar was being awarded the Sycamore Street property that had been generating $355 in monthly rent for Vonderahe. Under Indiana Code Section 31–15–7–5(5), a trial court may consider the "earnings or earning ability of the parties" when dividing the marital property. We cannot say the trial court abused its discretion, for the most part, in concluding that Fobar's greater net worth before the marriage was counterbalanced by Vonderahe's lesser earning capacity, thus justifying a practically equal division of property.

■ However, with respect to the property located in Buffalo, Indiana, we conclude that this is an instance in which the trial court should have effectively set aside that property to Fobar, thus resulting in a slightly greater distribution (more than fifty percent) of the marital estate to her. We have previously held that although all property of the parties must be included in the marital estate, regardless of its source, a court may choose to set aside certain property to one spouse when it is evident that such property was brought separately into the marriage, was never commingled with other marital assets, and was never treated as marital property. *See Castaneda v. Castaneda,* 615 N.E.2d 467, 470–71 (Ind.Ct.App.1993). Fobar has clearly made such a showing in this case, because she obtained the property both by inheritance and before the marriage. *See* Ind.Code § 31–15–7–5(2)(A)

---

4. It is unclear from the record and the findings whether these income figures included rental income or only included income from Fobar's employer and Vonderahe's self-employment.

and (B). Vonderahe never used the property, contributed to any improvements thereon, or participated in any decisions concerning the property. We are left with the firm conviction that a mistake has been made with respect to this asset, and thus we remand with instructions to enter a property division decree that deviates from a 50/50 division of property in favor of Fobar to the extent necessary to reflect the value of her interest in the Buffalo property.

 Finally, Fobar asserts she is entitled to more of the marital property because of the social security benefits her daughter received that allegedly contributed to the "operation and maintenance of the household." Appellant's Brief p. 29. Fobar does not explain how and why money that should have inured to the benefit of her daughter, i.e., by helping pay for the costs of raising her, should now be considered justification for awarding more property to her (Fobar) upon the dissolution of her marriage, especially where the records of how this money was spent were generally unclear and it appears this money was completely commingled with strictly "marital" income. There is no indication or argument that Vonderahe improperly used this social security money for his own benefit and deprived his step-daughter of its use, nor that he ever requested that any withdrawal from her accounts be made to pay for ordinary household expenses. In fact, there is evidence that Fobar used it for her own personal benefit, as she testified that she used her daughter's social security money to pay for her own (Fobar's) college education. Under the circumstances, we cannot say the trial court abused its discretion by not awarding more property to Fobar based on her daughter's social security income. *Cf. Gower v. Gower,* 427 N.E.2d 703, 707–08 (Ind.Ct.App. 1981) (holding trial court had no authority to award portion of the marital property to wife's children from another marriage even though money they received by way of social security benefits were commingled with the marital estate and used in part for the acquisition of marital property).

### Conclusion

The dissolution decree is not void due to the failure to strictly comply with the letter of Howard County Local Rule 16(B)(4), because both parties were represented by counsel and proceeded to judgment without insisting that the financial disclosure forms required by that rule be filed or alternatively that a written waiver of the rule be filed. We remand for more complete findings on the attorney fees issue. Finally, we conclude the trial court did err by not deviating from a 50/50 division of property to reflect Fobar's separate interest in the Buffalo property and remand with instructions to enter a new property division decree that effectively sets aside this property to Fobar. In all other respects, the trial court's findings and conclusions concerning the marital property were not clearly erroneous.

Affirmed in part and remanded in part.

DARDEN and NAJAM, JJ., concur.