Deborah J. MAXWELL, Appellant,

v.

Terry Steven MAXWELL, Appellee.

No. 55A01–0601–CV–2.

Court of Appeals of Indiana.

July 19, 2006.

Rehearing Denied Sept. 14, 2006.

Andrew C. Mallor, Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer, LLP, Bloomington, IN, Attorneys for Appellant.

Dale S. Coffey, Boren Oliver & Coffey, Martinsville, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Deborah Maxwell appeals the trial court's decree entered in the dissolution of her marriage to Terry Maxwell. We affirm in part and remand in part.

### Issues

The issues before us are:

I. whether the trial court properly divided the assets of the parties; and

II. whether it properly declined to award Deborah any attorney fees or costs.

### Facts

Deborah and Terry were married in 1971. They had two children, both of whom are emancipated. Terry is a veterinarian who earned in excess of $160,000 per year during the marriage. Deborah cares for elderly persons, earning $12 to $13 per hour and working forty to sixty hours per week.

On October 1, 2003, Terry moved out of the marital residence. In February 2004, Terry's mother died. Terry inherited from her an IRA and 244 shares of stock in a corporation. Terry already was in possession of fifty shares of the same stock. On October 8, 2004, Terry filed a petition for dissolution.

On December 12, 2005, the trial court entered a final dissolution decree, accompanied by findings of fact and conclusions thereon as requested by Deborah. The trial court found that the 244 shares of stock Terry inherited were worth $312,264.25 and that the IRA he inherited

was worth $17,054.00. With respect to the shares of stock, the trial court found:

> [D]ue to the circumstances in this case, due to the fact that at the time the parties were physically separated, Terry Maxwell only had an ownership in fifty (50) shares, given the fact that the other two hundred forty-four (244) shares of stock were inherited by [from?] Terry Maxwell's father's Trust and his mother's estate after the parties physically separated, and the fact that the shares of stock were never co-mingled as part of the marital property, and that Debbie Maxwell had nothing to do with the acquisition of those particular shares of stock, the Court finds that it is in its discretion to set aside the two hundred forty-four (244) shares of stock in M & B Maxwell Farms, Inc. entirely to Terry Maxwell as part of distribution of the marital estate. The Court bases its decision on the case of *Castaneda v. Castaneda*, 615 N.E.2d 467 (Ind.App.1993).

App. pp. 9–10. With respect to the IRA, the trial court found:

> [T]his particular fund has been left in an Edward Jones account, and Terry Maxwell has done nothing with it since his mother's death. Therefore, the Court finds that Terry Maxwell has inherited this particular piece of property, and, sets it aside to Terry Maxwell and pulls it out of the marital estate and does not subject it to a fifty percent (50%) division due to its inherited character.

*Id.* at 13. It then found that the remainder of the parties' assets should be divided 50–50. The trial court also rejected Deborah's request that Terry pay at least a portion of her attorney fees, stating:

> The Court further finds that both parties employed the services of attorneys to represent them in this matter. The Court finds that each party shall be responsible for their own attorney fees in this matter.

*Id.* at 11. The trial court made a similar finding with respect to litigation costs. Deborah now appeals.

## Analysis

■ Where, as here, a party has requested findings and conclusions under Indiana Trial Rule 52(A), our standard of review is well-settled. We must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Balicki v. Balicki*, 837 N.E.2d 532, 535 (Ind.Ct.App.2005), *trans. denied.* We will disturb the judgment only where there is no evidence supporting the findings or the findings do not support the judgment. *Id.* We do not reweigh the evidence and consider only the evidence favorable to the trial court's judgment. *Id.* Appellants must establish that the trial court's findings are clearly erroneous, which occurs only when a review of the record leaves us firmly convinced a mistake has been made. *Id.* at 535–36. However, although we defer substantially to findings of fact, we do not defer to conclusions of law. *Id.* at 536. Additionally, a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* "When requested, a trial court is required to make complete special findings sufficient to disclose a valid basis under the issues for the legal result reached in the judgment." *Id.* The purpose of Rule 52(A) findings and conclusions is to provide the parties and reviewing courts with the theory upon which the case was decided. *Id.*

### I. Division of Assets

■ Deborah first contends the trial court erroneously excluded from the marital estate the 244 shares of stock and IRA Terry inherited from his mother. Indiana Code Section 31–15–7–4(a) provides:

> In an action for dissolution of marriage . . . the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

    (A) after the marriage; and

    (B) before final separation of the parties; or

(3) acquired by their joint efforts.

This statute requires all property owned by the parties before separation to be considered part of the marital estate. *See Balicki*, 837 N.E.2d at 539. "With certain limited exceptions, this 'one-pot' theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind.Ct. App.2004), *trans. denied.* Only property acquired by a spouse after the final separation date is excluded from the marital estate. *Id.*

■ We do agree that the trial court's findings and conclusions are not entirely consistent as to whether it considered Terry's inheritance to be part of the marital estate and potentially subject to division with Deborah. For example, the value of these assets was not included in the trial court's final calculations as to the total value of the marital estate, at which time it indicated that it was dividing the estate 50–50. Taken as a whole, however, the findings and conclusions clearly demonstrate that the trial court considered the 244 shares of stock and IRA as marital property, but that the facts and circumstances justified a deviation from a 50–50 split of the marital estate to effectively award the entire value of those assets to Terry. The 244 shares of stock and IRA are included in finding number twenty, the trial court's listing of "the assets of the marriage...." App. p. 11. The fact that the trial court excluded these assets from its final calculation regarding the total value of the marital estate does not mean it improperly disregarded those assets as not being marital property. We presume the trial court followed the law and made all the proper considerations in making its decision. *See Castaneda v. Castaneda*, 615 N.E.2d 467, 469–70 (Ind.Ct.App.1993) (holding trial court had not improperly excluded inheritance from marital estate but had merely awarded value of inheritance entirely to wife).

For the sake of clarity, it would have been better practice to have included the inherited stock and IRA in the final marital pot calculations, instead of setting them off to Terry separately. Doing so would have more accurately reflected the actual division of the marital property. The actual total value of the marital estate is $1,188,815.37, not $859,497.12 as effectively found by the trial court. Terry received $759,066.81, or 63.9% of the marital estate, not $429,748.56 and 50% as the trial court stated. Deborah's $429,748.56 share of the marital estate, on the other hand, represents 36.1% of the actual total, not 50%. The trial court erred in crafting its order in this fashion. But it is not reversible error. The trial court's reasoning regarding a deviation from an equal division of property is clearly delineated.

Moreover, the evidence and findings support such a deviation. Deborah asks us to "review the court's division of the marital estate de novo," citing *MacLafferty v. MacLafferty*, 829 N.E.2d 938 (Ind. 2005). In *MacLafferty*, our supreme court reviewed a trial court's modification of a child support award. It noted that the importance of first-person observation of witnesses and avoiding disruption of final rulings remain compelling reasons for according deference to trial court rulings in family law matters. *Id.* at 941. It went on to state:

We recognize of course that trial courts must exercise judgment, particularly as

to credibility of witnesses, and we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record. Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.

*Id.* The court concluded that the question of whether an existing child support order is "unreasonable," as required to modify the order, "is, at minimum, a mixed question of law and fact. To the extent it is a question of law, it is the duty of the appellate court to give it de novo review...." *Id.* Deborah claims that the decision whether to deviate from a 50–50 division of property, based on one party's inheritance of property, likewise presents a "mixed question of law and fact" and that we need not defer to the trial court's determination.

■■■■ We must decline this invitation. *MacLafferty* ultimately turned upon our supreme court's construction of the statute governing modification of child support orders. *See id.* at 941–42. This case concerns whether the trial court's division of marital property was just and reasonable under a separate statute, Indiana Code Section 31–15–7–5. "Although this is in some sense an issue of law, it is highly fact sensitive and is subject to an abuse of discretion standard." *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002). In addressing issues regarding the division of marital property, we are not to weigh evidence and must consider the evidence in a light most favorable to the judgment. *Id.* Additionally, simply because one appellate decision holds that a

certain trial court's division of property was reasonable does not mean that a similar division is required in another case with similar facts. *See id.* Instead, trial courts, in their discretion, may choose to distribute the marital property unequally in favor of one spouse based on statutorily identified considerations, one of which is inherited property. *Id.* "Whether to do so is a matter of trial court discretion in light of all other relevant factors." *Id.*

■■■■ We cannot choose to disregard *Fobar* and, in accordance with that opinion, we will review the trial court's division of property here for an abuse of discretion. Indiana Code Section 31–15–7–5 provides that an equal division of the marital property is presumptively reasonable, but that the presumption may be rebutted by evidence of various factors, including whether the property was obtained by one spouse "through inheritance or gift." Here, Terry inherited the stock and IRA after he had already moved out of the marital residence. He was in possession of the inheritance for only a few months of the parties' marriage that lasted over thirty years. The inheritance was not commingled with any marital assets, and Deborah contributed nothing to its acquisition, directly or indirectly. Given these facts, we cannot say the trial court abused its discretion in deviating from an equal division of property in order to "set aside" the 244 shares of stock and IRA exclusively to Terry. *See Castaneda,* 615 N.E.2d at 470–71 (holding trial court did not abuse discretion in setting aside inheritance exclusively to wife where it was kept in wife's name separate from husband and husband did nothing to contribute to the accumulation of the funds, which were not treated as marital property or commingled with other marital assets). We affirm the division of the marital property.[1]

---

1. We acknowledge that another panel of this court recently issued an opinion reversing, as

an abuse of discretion, a trial court's decision

## II. Attorney Fees and Costs

■ Deborah also contends the trial court erred in not requiring Terry to pay at least a portion of her attorney fees and litigation costs. Indiana Code Section 31–15–10–1(a) provides:

The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

We review a trial court's decision regarding attorney fees and costs under this statute for an abuse of discretion. *Balicki*, 837 N.E.2d at 542. Some of the factors courts should consider when deciding whether to require one spouse to pay the attorney fees and costs of the other spouse include the parties's relative resources, ability to engage in gainful employment, and ability to earn an adequate income. *Id.* at 543. Other factors to consider include the amount of assets awarded to the parties and which party initiated the action. *Selke v. Selke*, 600 N.E.2d 100, 102 (Ind.1992). The legislative purpose behind the award of costs and attorney fees under Indiana Code Section 31–15–10–1 is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. *Balicki*, 837 N.E.2d at 543.

■ Although it is generally true that a court need not list specific reasons for awarding or not awarding attorney fees in a dissolution action, that general rule is inapplicable when one party has specifically requested findings and conclusions under Trial Rule 52. *See Fobar v. Vonderahe*, 756 N.E.2d 512, 517–18 (Ind.Ct.App. 2001), *summarily aff'd in relevant part*, 771 N.E.2d 57, 58 n. 1 (Ind.2002). A trial court must, upon request, make complete special findings sufficient to disclose a valid basis for the legal result reached in the judgment and to provide the parties and reviewing courts with the theory upon which the case was decided. *Balicki*, 837 N.E.2d at 536. Here, the trial court provided no explanation as to why it was not requiring Terry to pay at least a portion of Deborah's attorney fees and costs. It simply stated that each party had incurred costs and attorney fees and each party would be responsible for paying them.

■ The trial court's findings and conclusions contain no indication that it considered the multiple factors that are relevant to a decision whether to award attorney fees and costs in a dissolution action. This gives us pause, especially given the facts here: Terry initiated the action, he earns much, much more than Deborah,[2] and he was awarded 63.9% of the marital estate. Deborah left college when she married Terry, who continued on to earn his veterinary doctor degree and, therefore, has much more earning potential than Deborah. Additionally, although the value of assets Deborah received in the divorce is not insubstantial, there is the possibility, not addressed by the trial court, that the assets awarded

in a dissolution action to set aside property inherited by and gifted to the husband entirely to him. *See Eye v. Eye*, 849 N.E.2d 698 (Ind.Ct.App.2006). That case is factually distinguishable from this one in several respects, such as that there was some evidence of commingling and that the wife had at least indirectly helped prompt the gifts and inheritance to the husband. Because of these starkly

different facts, we affirm this trial court's division of marital property.

2. As noted, Terry made upwards of $160,000 annually during the marriage. Deborah makes $12–$13 per hour, working forty to sixty hours per week; this comes to approximately $30,000 annually.

cannot be readily liquidated or available to pay attorney fees and costs related to this action. In sum, we cannot discern upon what basis the trial court decided not to award any attorney fees or costs to Deborah, let alone whether such basis is valid. The trial court's findings regarding attorney fees and costs are inadequate to support the decision it made and we remand for further consideration of this issue. *See Fobar*, 756 N.E.2d at 518.

### Conclusion

The trial court did not abuse its discretion in the manner in which it divided the property of the parties. However, the trial court's findings regarding attorney fees and costs are inadequate to explain why Deborah was denied any such award and we remand for further consideration of that issue.

Affirmed in part and remanded in part.

FRIEDLANDER, J., concurs.

MATHIAS, J., dissents in part and concurs in part with separate opinion.

MATHIAS, Judge, dissenting in part and concurring in part.

I respectfully dissent in part and concur in part. As the majority notes, "trial courts, in their discretion, may choose to distribute the marital property unequally in favor of one spouse based on statutorily identified considerations, one of which is inherited property." *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind.2002). However, "[w]hether to do so is a matter of trial court discretion in light of all other relevant factors." *Id.* I believe the trial court's distribution of the marital property constitutes an abuse of discretion.

Trial courts must measure each factor and the evidence adduced therefrom against the weight of the statutory presumption of an equal distribution. *Cowden v. Cowden*, 661 N.E.2d 894, 896 (Ind.

Ct.App.1996). "This balancing of the statutory factors and the evidence related to them is the essence of the trial court's work in crafting a just and reasonable property division." *Id.*

The simple fact of the matter is that Terry inherited the property at issue, valued at more than $339,000, just eight months before he filed his petition for dissolution of his marriage of thirty-three years. For all of those years, and as they raised two children to the age of majority, Terry and Deborah contributed equally to the marriage. After a marriage of such substantial length, and in light of Deborah's limited earning capacity, I believe equity and relevant statutory criteria dictate a division of all property of whatever character in excess of fifty percent to Deborah.

Here, while the trial court considered "the inherited character" of the stock and IRA, it made no findings at all regarding the parties' economic circumstances or earning abilities. *See* Ind.Code § 31–15–7–5. Therefore, I would reverse and remand for redistribution of the marital estate in light of all relevant common law and statutory criteria.

However, I fully concur in the majority's decision to remand the case for an award of attorney's fees to Deborah. I fully subscribe to the majority's determination that "the trial court's findings regarding attorney fees and costs are inadequate to support the decision it made" on Deborah's petition for attorney fees.