**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**ALLAN R. STOUT**
Stout & McEntarfer, P.C.
Angola, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL J. BORGMANN**
Helmke Beams LLP
Fort Wayne, Indiana



FILED

Apr 23 2012, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF BRENDA S. SANDERS and PAUL R. SANDERS, | ) | |
| | ) | |
| | ) | |
| PAUL R. SANDERS, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 76A03-1107-DR-398 |
| | ) | |
| BRENDA S. SANDERS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Monte L. Brown, Special Judge
Cause No. 76C01-0911-DR-401

**April 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Paul Sanders (Husband) appeals the trial court's division of marital property pursuant to the dissolution of his marriage from Brenda Sanders (Wife). Wife cross-appeals requesting appellate attorneys' fees. We affirm the trial court's decision and deny Wife's request for appellate attorneys' fees.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on October 10, 1987. At the beginning of their marriage, Husband's parents sold real estate containing a vacant house to Husband and Wife for $1.00. The property was titled to both Husband and Wife, and it served as the parties' marital residence. In 2000, Husband's father died. As part of his father's estate, Husband received an undivided one-half interest in the family farm. The other half went to Husband's mother. Husband's mother did not live on the farm; instead, it was rented to an independent farmer for $20,000 per year. During their marriage, Wife made approximately $495 per week from her employment at WalMart. Husband made approximately $1,425 per week running a trucking business he and Wife owned.

Wife filed for dissolution on November 24, 2009. The trial court issued findings of fact and conclusions of law dissolving the parties' marriage on May 12, 2011.

## DISCUSSION AND DECISION

The trial court issued specific findings at the request of the parties pursuant to Ind. Trial Rule 52(A). Thus, our standard of review is two-tiered. *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 956 (Ind. Ct. App. 1997). First, we must determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will

reverse the judgment only when it is clearly erroneous. *Id.* Findings are clearly erroneous when the record lacks any evidence to support them. *Id.* We will neither reweigh the evidence nor assess witness credibility. *Id.*

The trial court determined the value of the marital estate totaled $793,814. Nearly eighty percent of the estate - $619,970 - was the value of the farm Husband inherited from his father. The trial court distributed seventy-five percent of the marital pot to Husband, but Husband argues the trial court erred when it awarded Wife a portion of his interest in the property he inherited from his father. We disagree.

The determination of the assets and liabilities included in the marital estate is governed by Ind. Code § 31-15-7-4(a), which states, in relevant part:

> (a)    In an action for dissolution of marriage under IC 31-15-2-2, the court shall divide the property of the parties, whether:
>     (1)    owned by either spouse before marriage;
>     (2)    acquired by either spouse in his or her own right:
>         (A)    after the marriage; and
>         (B)    before the final separation of the parties; or
>     (3)    acquired by their joint efforts.

The trial court found Husband inherited the farm property from his father in 2000, which was after the parties were married, and before their separation. Therefore, the farm is part of the marital estate. *See, e.g., Grathwohl v. Garrity*, 871 N.E.2d 297, 301 (Ind. Ct. App. 2007) (all property owned by the parties prior to separation is required to be included in marital estate, including inherited property). Accordingly, we affirm the trial court's inclusion of Husband's farm inheritance in the marital estate.

Division of the assets between divorcing parties is left to the trial court's discretion.

3

*Akers v. Akers*, 729 N.E.2d 1029, 1031-32 (Ind. Ct. App. 2000). Even if the facts and reasonable inferences might allow us to reach a conclusion different from that of the trial court, we will not substitute our judgment unless its decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. We consider only the evidence favorable to the judgment. *Goodman v. Goodman*, 754 N.E.2d 595, 599 (Ind. Ct. App. 2001), *reh'g denied*. We may not reweigh the evidence or reassess the credibility of the witnesses. *Akers*, 729 N.E.2d at 1032.

A party challenging a property division must "overcome a strong presumption that the court considered and complied with the applicable statute." *Id*. (quoting *In re Marriage of Bartley*, 712 N.E.2d 537, 542 (Ind. Ct. App. 1999)). We consider the court's disposition of marital property "as a whole, not item by item." *Krasowski v. Krasowski*, 691 N.E.2d 469, 473 (Ind. Ct. App. 1998). When we review the division, our focus is on what the court did, not what the court could have done. *Akers*, 729 N.E.2d at 1032.

When determining how the martial estate should be divided, the trial court presumes an equal division of property between the parties is "just and reasonable." Ind. Code § 31-15-7-5. When this presumption is rebutted, the trial court considers:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> (2) The extent to which the property was acquired by each spouse:
>     (A) before the marriage; or
>     (B) through inheritance or gift.
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
> (4) The conduct of the parties during the marriage as related to the disposition

4

or dissipation of their property.
(5) The earnings or earning ability of the parties as related to:
     (A) a final division of property; and
     (B) a final determination of the property rights of the parties.

*Id.*

Regarding inheritances, we have held the trial court may deviate from an equal distribution of marital property when one party proves (1) he or she is the sole owner of the account, (2) the other spouse did not contribute to or benefit from the funds in the account, (3) the inherited funds were not commingled with other marital assets, and (4) the funds were not used as if they were marital property. *Castaneda v. Castaneda*, 615 N.E.2d 467, 470-71 (Ind. Ct. App. 1993).

Addressing the *Castaneda* factors, the trial court found:

25.    On December 28, 2000, [Husband] inherited an undivided one-half interest in 344.428 acres of real estate located in Steuben County, Indiana ("FARM") which real estate is more particularly described in Exhibits "B", "C" and "D" attached hereto. For the most part, the FARM consists of undeveloped land.

            * * *

29.    Neither [Wife] nor [Husband] actively farmed the FARM after [Husband] received his undivided one-half interest in it on December 28, 2000.

30.    [Husband] has repaired FARM tile and/or mended fences on occasion since December 28, 2000.

31.    [Wife] provided some nominal assistance to [Husband's mother] with regard to the FARM books for a year or two prior to 2007, after which time, for a period of approximately two (2) years, [Wife] took over the primary responsibility for the FARM bookkeeping operations.

32.    [Husband] and [Husband's mother] rented the FARM land to Tim Farriote on an annual gross farm rent basis from 2000 through the date of the separation. In 2009, the annual gross farm rent was $20,446.

33.    The FARM's real estate taxes and insurance were paid out of the gross FARM rent.

34.    The remaining balance of the gross FARM rent from 2000 through the

5

date of separation was used exclusively by [Husband's mother] to pay for her ongoing expenses such as utilities and credit card bills.

35. Neither [Husband] nor [Wife] receive any portion of, or any benefit from, any of the gross FARM rent, of any type or description, from 2000 through December 31, 2009 except for the payment of the real estate taxes and insurance.

\* \* \*

37. That aside from the day to day marriage obligations or maintaining her household and providing for her husband and children, [Wife] did not participate in operation of her husband's family farm. [Wife] tried to plow once, without success. [Wife] would occasionally drive to town to obtain parts for broken farm equipment. [Wife] assisted [Husband] and their children in caring for cattle which were maintained rent free on the [Husband's mother's] farm. Once the cattle were sold the parties hereto shared the income from the cattle sales. [Wife] did testify, without any corroborating evidence, that [Husband] and [Wife] paid some farm bills including parts, cattle feed and supplies for the cattle operation, from the [Husband]'s Trucking company account. The evidence further established that [Husband's mother] received no financial benefit from [Husband and Wife's] cattle operation.

38. The [sic] aside from the marital relationship of the parties, [Wife] made no financial contributions to the acquisition or maintenance of [Husband's] one-half (1/2) share of the FARM inherited by him following his father's death.

39. That [Wife's] name never appeared on any documents evidencing ownership interest in the [Husband's] and [Husband's mother's] 244.428 acre farm.

40. That in the years following [Husband's] inheritance of an interest in the FARM property, [Husband] never conveyed any of his interest to [Wife], rather, he maintained his interest in the FARM solely in his name.

41. That for all practical purposes, [Husband's mother] has exercised nearly complete dominion and control over all the FARM real estate, including that deeded to [Husband] in December, 2000.

(App. at 13-15.)

As indicated in Finding 37, Wife testified a portion of the bills for the farm were paid from Husband's trucking business account, which was part of the marital estate. Wife

6

presented tax forms to indicate the rent from the farm and all depreciation stemming from items on the farm were listed as part of Husband's trucking company assets and liabilities. The trial court found the process by which the farm income was reported on the trucking company taxes "financially benefited [Wife] and [Husband]." (*Id*. at 15.)  In addition, the trial court found, "That on rare occasion, [Wife] and [Husband] used nominal personal funds of their own to pay for FARM expenses when there were insufficient funds in what [Wife] and [Husband] referred to as the FARM account." (*Id*. at 15-16.)

Based on the trial court's findings, we conclude the trial court did not err when it distributed most of the farm to Husband.  Even though the interest in the farm was in Husband's name only, the evidence presented supports the trial court's finding some of the funds from Husband's ownership interest in the farm benefitted both Husband and Wife, particularly in the case of the tax benefits; marital assets were used to benefit the farm; the funds from the farm were comingled with other marital assets, such as Husband's trucking company; and those funds Husband and Wife did receive from the farm, such as the tax benefits, were used as marital property.  Accordingly, we hold the trial court did not abuse its discretion when it gave Wife the monetary value of a portion of Husband's interest therein. *See, e.g., McMaster v. McMaster*, 681 N.E.2d 744, 748 (Ind. Ct. App. 1997) (trial court did not abuse its discretion when it included husband's inheritance in marital estate and divided the marital estate unequally in favor of husband).

7

2.        Appellate Attorneys' Fees

In her cross-appeal, Wife requests appellate attorneys' fees pursuant to Ind. Appellate Rule 66(E), which states in relevant part: "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith.  Damages shall be in the Court's discretion and may include attorneys' fees."  Wife claims Husband's appeal was brought in bad faith.  She notes he used as a basis for his appeal a decision that has been abrogated by statute, and argues that proves he intended to "wear down Wife's financial resources with the appeal having no real merit."  (Br. of Appellee at 19.)

An award of appellate attorneys' fees pursuant to Rule 66(E) is discretionary and may be ordered when an appeal is "replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Trost-Steffan v. Steffan*, 772 N.E.2d 500, 514 (Ind. Ct. App. 2002), *reh'g denied*.  In awarding these fees we must use extreme restraint because of the potential chilling effect upon the exercise of the right to appeal.  *Id*.  The sanction of appellate damages for lack of merit should be applied only when a party's contentions and arguments are "utterly devoid of all plausibility." *Id*.

While ultimately unsuccessful, Husband's arguments were not void of all plausibility, and were reasonable challenges to the court's exercise of its discretion in dividing the parties' marital estate.  Accordingly, we deny Wife's request for appellate attorneys' fees.

**CONCLUSION**

We hold the trial court did not err when it found the farm Husband inherited was part of the marital estate and distributed most of it to Husband. Additionally, we deny Wife's request for appellate attorneys' fees.

Affirmed.

CRONE, J., and BROWN, J., concur.