**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 30 2012, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**I. MARSHALL PINKUS**
Pinkus & Pinkus
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JAMES C. SPENCER**
Dattilo Law Office
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF: | ) | |
| B.H. by next friend: | ) | |
| B.C., Father, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1106-JP-311 |
| | ) | |
| D.H., Mother, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dryer, Judge
The Honorable John J. Boyce, Commissioner
Cause No. 49D10-0303-JP-747

**March 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

B.H. was born out of wedlock to B.C. ("Father") and D.H. ("Mother") in 2003. An agreed judgment was entered by the trial court, establishing Father's paternity as well as determining custody, child support, and parenting time. Mother was granted sole legal and physical custody of B.H., subject to Father having parenting time pursuant to the Indiana Parenting Time Guidelines. In 2008, Father filed a verified petition seeking to determine B.H.'s school placement, modify B.H.'s custody such that Father would have joint physical custody, change venue from judge, and set a hearing on the petition. Due to various circumstances, the final hearing on Father's petition was not held until September 2010. In May 2011, the trial court entered findings of fact and conclusions of law, denying Father's requests to place B.H. in a different school district and to grant Father joint physical and/or legal custody. Father raises two issues for our review: whether the trial court abused its discretion by denying his request that B.H. be placed in a different school district and/or by denying his request to modify custody and award Father joint custody. Concluding the trial court did not abuse its discretion in either respect, we affirm.

## Facts and Procedural History[1]

B.H. was born in 2003, and within three weeks Father filed a petition to establish paternity. Soon thereafter, the trial court entered an agreed judgment establishing paternity, Mother's sole legal and physical custody, and Father's parenting time, and setting Father's

---

[1] Mother claims in her statement of the case that Father's statement of the case is unduly argumentative and fails to adhere to our Appellate Rules. We recognize the line between persuasive and improper brief writing can be blurry at times, and we remind counsel to adhere to our Appellate Rules in drafting appellate briefs.

child support obligation. In 2004, the parties contested every aspect of their prior agreed judgment except paternity. The court accepted and adopted a partial mediated agreement in 2005, and it held a hearing in 2006 to adjudicate the pending issues. As a result of the 2005-06 proceeding, Mother maintained sole legal and physical custody of B.H., subject to Father having parenting time in accordance with the Indiana Parenting Time Guidelines.

In October 2008, Father filed a verified petition requesting a determination of B.H.'s school district placement, modification of B.H.'s custody to joint legal and physical custody, change of venue from the judge, and a hearing. At the time of Father's petition, B.H. was five years old and not yet enrolled in elementary school. The trial court ordered a change of venue from the judge and transferred the case in November 2008. Thereafter, a lengthy delayed ensued. The 2008 general election caused a new judge to hear Father's petition, but before the new judge could do so, he recused himself from the case and the clerk assigned the case to a different court. An initial hearing occurred on July 30, 2009, but because B.H. was scheduled to start school in August of 2009, the hearing was limited in scope to that issue alone. Due to limited time, the case was reset for another evidentiary hearing. On August 20, 2009, Father filed a motion to set a hearing to complete the case, and the trial court conducted a second evidentiary hearing on October 1, 2009, at the conclusion of which no ruling was issued concerning B.H.'s school placement. Because the trial court did not issue a ruling prior to school starting in August, B.H. was enrolled in Decatur Township and began attending Decatur Township Elementary School.

In January and March 2010, the trial court conducted further evidentiary hearings regarding school placement, custody, and parenting time. Because the presentation of evidence was incomplete, Father filed a motion on July 8, 2010, asking the trial court to set the matter for another hearing, and on July 29, 2010, the trial court granted Father's motion and set an additional hearing for September 10, 2010. Prior to the hearing's commencement on September 10, 2010, Mother filed a motion asking the trial court to modify its 2006 order regarding child support, custody, and parenting time. An additional hearing was set for September 28, 2010. Mother and her counsel failed to appear, and the trial court allowed for the presentation of evidence by written submission for ten days following the September 28 hearing. On December 3, 2010, Father submitted proposed findings and conclusions. On March 18, 2011, Father filed a motion asking the trial court to make a final ruling. On May 25, 2011, Father filed a Trial Rule 53.2 motion, but Father thereafter moved to withdraw his Trial Rule 53.2 motion and the trial court entered findings of fact and conclusions of law on May 26, 2011. The court's findings and conclusions include, in pertinent part:

I. Findings of Fact:
* * *
13. At all times since [B.H.]'s birth, [Mother] has been the child's primary physical custodian.
14. At the time of [B.H.]'s birth, and at all times since, [Mother] has been employed with the United States Postal Service. [Mother] and [B.H.] have lived in only one home throughout this time.
15. [Mother] has been an appropriate custodial parent. She has provided for [B.H.], even when support was not being paid by [Father]. She has loved and nurtured [B.H.] and provided her with a solid foundation family [sic], community and educational connections and resources. [Mother] loves her daughter and [B.H.] loves her mother.
16. [Father] has been an engaged and dedicated parent of [B.H.] throughout her existence. He filed immediately after her birth to establish his right to

4

actively father her and to participate in rearing her into a healthy and happy young adult, prepared to participate positively in society. He has sought for the very best for his daughter and his efforts to determine school enrollment or to clarify and/or modify her custodial arrangements have unceasingly sought her best interests. His relationship with her has been founded in his love for her and [B.H.], in turn, loves her father.

17. [Father]'s employment and living arrangements have been much more volatile than have [Mother]'s. . . .

* * *

19. Because of the changes in employment and income [Father] has lived in six different homes since the inception of this case. He currently lives in Avon . . . .

20. While both parents have continuously sought [B.H.]'s best interests, each has been unflagging in the belief that her or his conception of what was best for [B.H.] was superior to that of the other parent.

21. [B.H.] . . . has been largely unfazed by her parents' diverse visions for her. She is a healthy and happy youngster. She excels in school and has established familial bonds with relatives of both parents and strong social ties with classmates and playmates in her parents' neighborhoods. . . .

22. Mary Sanders, PhD, is a clinical psychologist who specializes in assessing and recommending educational placements for children. Dr. Sanders evaluated [B.H.] at [Father's] request. Dr. Sanders found [B.H.] capable of excelling in any educational setting. Based upon her knowledge of the Decatur Township and Avon schools [sic] Dr. Sanders opined that [B.H.]'s enrollment in the Avon schools would be likely to more effectively challenge her development. She concluded the social, economic and academic environment provided by the Avon schools better fit [B.H.]'s abilities and needs than did those of Decatur Township schools.

23. Dr. Sanders expressed her further professional opinion that children of [B.H.]'s age and ability are resilient and would easily adapt to any change in schools.

* * *

25. Both parents gave anecdotal evidence of [B.H.]'s achievement in her current school. For instance, [Father] recounted his observation of her reading instruction and found it to be insufficiently challenging. [Mother], on the other hand, observed that [B.H.] excelled in her reading ability and was suitably challenged, encouraged and recognized by her teacher and school.

* * *

II. Conclusions of Law:

* * *

32. When considering modification of custody in a paternity matter, a court is prohibited from modifying a child custody order unless:

5

a. Modification is in the best interests of the child; and

b. There is a substantial change in one (1) or more of the factors that the court may consider under section 2 . . . and, if applicable, section 2.5 . . . of this chapter. Indiana Code § 31-14-13-6 (West 2010).

33. The language of Indiana Code § 31-14-13-2 sets out the relevant factors to be considered when determining custody as follows:

a. The age and sex of the child.

b. The wishes of the children's parents.

c. The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

d. The interaction and interrelationship of the child with:
i. the child's parents;
ii. the child's siblings; and
iii. any other person who may significantly affect the child's best interests.

e. The child's adjustment to home, school and community.

f. The mental and physical health of all individuals involved.

g. Evidence of a pattern of domestic or family violence by either parent.

h. Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) . . . of this chapter. . . .

34. No evidence was presented by either party establishing existence of a de facto custodian. Consequently, the court need not consider the factors listed in Indiana Code § 31-14-13-2.5.

* * *

36. In this instance, [Father] has shown that [B.H.] may be likely to obtain better educational opportunity within the Avon schools than in the Decatur Township schools.

37. The data he offered shows that Avon schools rate more highly than Decatur Township on the metrics tracked by the State. The data does not, however, explain the reasons behind the difference.

38. The published data is silent as to whether Avon's teachers are more inspirational and the educational environment more rich, or whether teachers at Avon simply do a better job of "teaching to the test" – of preparing children to perform well on standardized tests without regard to whether such instruction will best engage a child in the lifelong task of learning and fulfilling her or his individual potential.

39. The evidence presented, even that of the expert, Dr. Sanders, fails to establish that any school is uniquely suited to accommodate [B.H.] as an

individual, a youngster with a constellation of interests, strengths and weaknesses that would best be accommodated only in Avon. The evidence merely suggests that children, generally, would perform well at Avon, perhaps better than at Decatur Township. Neither Dr. Sanders, nor the published performance data, could rule out the possibility that [B.H.] may more likely form an identification with a teacher within the Decatur Township system, rather than at Avon, that may inspire her to set and achieve high academic and moral goals. Neither did the evidence establish that any possible improvement resulting from a change to Avon would not be outweighed by the effects of the continuing conflict and contention between her parents. According to the data, some students excel within each school system and some do very poorly, failing to graduate. None of the evidence established that [B.H.] would excel in one school but not in the other, nor that she would fail in one school but not in the other.

40. Based upon the evidence, this court cannot conclude that a change of educational placement, absent the voluntary and cooperative decision of the party's [sic] to do so, is in [B.H.]'s best interest.

41. The evidence shows that [B.H.] was an intelligent, healthy and happy little girl when [Father] filed his petition to modify. It also shows that she continued to be an intelligent, healthy and happy child at the time of the final hearing. [Father] has shown no substantial or significant change.

42. Further, the evidence shows that [Father] and [Mother] have maintained a contentious, high conflict relationship with one another since [B.H.]'s birth. Each parent loves [B.H.], yet fails to acknowledge the importance of the other's role in [B.H.]'s life. There has been no change in their wishes for [B.H.], nor in their interaction and interrelationship with one another. The existence of this conflict, alone, is sufficient to support the court's conclusion that an award of shared physical or legal custody is not in [B.H.]'s best interests.

43. Should the parents significantly alter their relationship with one another; should they develop the capacity to easily communicate with one another; should they learn to honor and respect the perspective of the other in considering [B.H.]'s interests – that would be a substantial change that would support an award of joint custody. Unfortunately for [B.H.], the parties have yet to function at that level of cooperation and consensus.

Appellant's Appendix at 57-65.

The trial court concluded Father failed to establish by a preponderance of the evidence

that B.H.'s enrollment in Avon schools rather than Decatur Township schools would be in

7

her best interests, that a change in legal or physical custody is in the best interests of B.H., or that a substantial change has occurred in one or more factors listed in Indiana Code section 31-14-13-2. Therefore, Father's requests that B.H. be placed in Avon schools and that custody be modified to joint legal and physical custody were denied. Father now appeals.

<u>Discussion and Decision</u>

I. Standard of Review

In general, we review custody modifications for an abuse of discretion, "with a 'preference for granting latitude and deference to our trial judges in family law matters.'" <u>Van Wieren v. Van Wieren</u>, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006) (quoting <u>Kirk v. Kirk</u>, 770 N.E.2d 304, 307 (Ind. 2002)). When a trial court enters findings of fact and conclusions of law, we will not set them aside unless they are clearly erroneous, Ind. Trial Rule 52(A), which occurs only when a review of the record leaves us firmly convinced a mistake has been made. <u>Maxwell v. Maxwell</u>, 850 N.E.2d 969, 972 (Ind. Ct. App. 2006), <u>trans. denied</u>. We must first determine whether the evidence supports the findings and second, whether the findings support the judgment. <u>Id.</u> We will disturb the judgment only where no evidence supports the findings or the findings do not support the judgment. <u>Id.</u> We will not reweigh the evidence and we consider only the evidence favorable to the trial court's judgment. <u>Id.</u>

II. Custody

For an initial custody determination, Indiana Code section 31-14-13-2 provides:

The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:

8

(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
 (A) the child's parents;
 (B) the child's siblings; and
 (C) any other person who may significantly affect the child's best interest.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

However, when a child is born out of wedlock, the general rule is that the biological mother has sole legal custody. Ind. Code § 31-14-13-1. For modifications of custody, Indiana Code section 31-14-13-6 provides:

The court may not modify a child custody order unless:

(1) modification is in the best interests of the child; and
(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

Before addressing Father's petition for modification of custody, we note that Father argues "[t]here should be a legal presumption applied in Dissolution and Paternity cases, that the parents should share joint and legal [sic] physical custody." Appellant's Brief at 19. In support of his contention, Father reasons that less litigation would occur in dissolution cases if his proposed presumption existed. However, this presumption does not exist in the applicable statutes, and whether it should be added is a question for the legislature. The issue

9

presented here is whether the trial court abused its discretion by denying Father's petition for modification of custody.

Father also argues the relationship between B.H.'s parents should not be a factor in determining what is in B.H.'s best interests. This is also contradictory to the applicable statutes, and we once again defer to the legislature. See Ind. Code § 31-14-13-2 (providing "[t]he court shall consider all relevant factors," including those expressly listed); Ind. Code § 31-14-13-2.3(c) ("In determining whether an award of joint legal custody . . . would be in the best interest of the child," in addition to considering whether an agreement has been made between the parents, "[t]he court shall also consider: . . . (2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare; . . . ."). Thus, we will proceed with the custody modification standard set forth in Indiana Code section 31-14-13-6.

The agreed judgment of the parties, which first established custody of B.H., granted sole legal and physical custody to Mother. In 2006, after B.H.'s custody and various other issues were disputed, Mother maintained sole legal and physical custody. Since 2006, the only modifications to the arrangement between Mother and Father have been regarding Father's parenting time and child custody obligations. Thus, in his petition to the trial court for a modification of B.H.'s physical custody,[2] Father had the burden to establish that the dictates of Indiana Code section 31-14-13-6 were met. See In re Paternity of B.D.D., 779

---

[2] While Father's petition for modification in the trial court and statement of issues in his appellate brief refer only to a request for modification of physical custody of B.H., the argument in his brief is peppered with contentions for a modification of legal custody and the trial court's conclusions address both legal and physical custody modification. Thus, despite the fact that Father may not have properly raised the issue of modifying

10

N.E.2d 9, 14 (Ind. Ct. App. 2002) (stating it was the non-custodial parent's burden to prove a substantial change sufficient to justify modification of original custody order).

The trial court concluded Father failed to prove that a modification of custody is in the best interests of B.H. or that a substantial change has occurred in any of the statutory factors. In support of its conclusion that Father failed to show that a modification is in B.H.'s best interests, the trial court's findings of fact include that Mother has been employed with the postal service ever since B.H.'s birth; Mother and B.H. have only lived in one home; Mother has been a loving and nurturing parent and provided B.H. with a solid family foundation, community connections, and educational resources; Father's employment and living arrangements have been volatile; Father has lived in six different homes since the inception of this case; B.H. is a healthy and happy child who excels in school and has established familial bonds and friendships with peers via both parents; and Mother and Father have repeatedly acted in a contentious manner regarding B.H.'s development and their roles in her life. Father does not contest any of the trial court's findings of fact. After reviewing the record, we conclude the trial court's findings of fact are supported by the evidence.

The trial court's conclusion that Father failed to prove a modification of custody is in B.H.'s best interests was supported by its findings of fact and is not clearly erroneous. Reviewing the evidence in favor of the trial court's judgment, there is ample support to conclude that Mother is doing a terrific job as the custodial parent. B.H. is well-adjusted, has friends and family in her life, and is excelling in school. Further, some evidence suggests a change in custody could have a negative impact on B.H. Father's employment and living

_____

legal custody of B.H., we address both in our review of the trial court's judgment.

11

arrangements have been volatile, and stability can be an important factor in the development of children. Also, as the trial court pointed out, the parties have maintained a rather contentious relationship, and modifying the custody arrangement to give the parents joint custody might make this contention worse, or at least cause it to reveal itself more frequently. Observing such contention is not healthy for a developing child. Regarding Father's request for joint legal custody, the contentious nature of the parties' relationship sufficiently supports the trial court's conclusion that joint legal custody is not in B.H.'s best interests.

We therefore need not address whether Father sufficiently established a substantial change in one of the factors listed in Indiana Code section 31-14-13-2 because the statute providing for modification of a child custody order requires the non-custodial parent prove both that modification is in the best interests of the child and that a substantial change in one of the statutory factors has occurred. However, we point out that in Father's appellate brief, he makes absolutely no effort to argue that a substantial change in any of the factors has occurred, nor do we find one in the record.

### III. School Placement

Father next argues the trial court abused its discretion by denying his request that B.H. be taken out of the Decatur Township school district and placed in the Avon school district. The trial court's judgment includes various findings of fact and conclusions of law supporting its denial of Father's request, such as Dr. Sanders' conclusion that B.H. was capable of excelling in any educational setting; the facts that B.H. is currently excelling in school academically and has developed strong social ties with classmates; Mother's

testimony that B.H. was challenged, encouraged, and recognized for her efforts by her teacher in Decatur Township; the fact that by the time of the trial court's judgment, B.H. was already attending second grade in Decatur Township; data presented suggesting Avon is a better school district than Decatur Township is not supported by reasons for the distinction, and the data may in fact be nothing more than a product of Avon teachers doing a better job of preparing students for standardized tests; and B.H. is a happy and intelligent child. Father does not contest any of the trial court's findings of fact. After reviewing the record and considering only the evidence favorable to the trial court's judgment, we conclude the trial court's findings of fact are supported by the evidence.

The trial court's findings support its judgment that Father failed to establish that enrolling in the Avon school district is in the best interests of B.H. The trial court's findings that B.H. was excelling in school, being challenged academically, and developing strong social ties with classmates are sufficient to support its conclusion that Father did not establish changing schools would be in B.H.'s best interests. The trial court's judgment is not clearly erroneous, and, thus, it did not abuse its discretion.

## Conclusion

The trial court's judgment denying Father's petition for modification of custody of B.H. and for a determination that B.H. should attend the Avon school district is not clearly erroneous, and we therefore affirm.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.