Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 03 2013, 7:00 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LINDSEY A. GROSSNICKLE**
Bloom, Gates & Whiteleather, LLP
Columbia City, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**JOANNE M. KOLBE**
The Law Office of Joanne M. Kolbe P.C.
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ARMANDO B. QUINTERO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 43A03-1210-DR-434 |
| | ) | |
| MARIA L. QUINTERO, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Duane G. Huffer, Judge
Cause No. 43D01-1006-DR-97

**July 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Armando Quintero ("Husband") appeals from the decree of dissolution of marriage issued by the Kosciusko Superior Court. He argues that the trial court abused its discretion when it failed to hold a hearing to determine whether he needed an interpreter, resulting in fundamental error. He also argues in the alternative that the trial court erred in its property disposition to his second wife, Maria Quintero ("Wife"), because it treated the couple's residence as a divisible marital asset and divided Husband's pension improperly. Finally, Husband argues that the trial court abused its discretion in its award of attorney fees to Wife.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Husband was born on May 13, 1946 in Eagle Pass, Texas. Although he is a United States citizen by birth, his first and primary language is Spanish. Since July 14, 1969, he has been employed at Dalton Foundry. On the date of the final hearing, he was a mechanic for the company, and was contemplating retirement. During his time at Dalton, he vested in a pension.

Husband has four children from his first marriage of approximately twenty-five years, which ended upon the death of his first wife in 1993. Husband used proceeds from her life insurance policy to pay off the mortgage on his residence at 712 West Tower Street, Pierceton, Indiana, currently valued at $78,000.

Roughly two years after his first wife's death, on June 1, 1995, Husband and Wife were married.[1] During their marriage, only Husband's youngest daughter, Lisa, lived with them in the Tower Street residence. Wife has a daughter from a prior relationship who also lived with them in the Tower Street residence. Over the course of their fifteen-year marriage, Husband worked at Dalton Foundry and Wife cared for the children and the home. Wife's only income consisted of child support payments she received for her daughter, which began and continued in the amount of $250 per month before the amount was raised to $466 per month in 2003. During this time, Husband earned approximately $45,000 to $60,000 per year. The couple accumulated no debts.

On February 1, 2010, Husband transferred the Tower Street residence to his daughter, Lisa, for consideration of one dollar. Lisa filed a notice to quit against Husband, Wife and Wife's daughter on May 15, 2010, ordering them to leave the premises. Wife was in Texas at the time, caring for an ailing relative. On July 6, 2010, the Kosciusko Superior Court granted possession of the Tower Street residence to Lisa and ordered Husband, Wife and her daughter to vacate the dwelling. Although Wife and her daughter have vacated the residence, Husband continues to live there and Lisa does not live in the residence.

On June 2, 2010, Wife filed a Petition for Dissolution of Marriage against Husband. The trial court entered a joint temporary restraining order to protect the marital assets on July 12, 2010. As of June 2010, their only assets included a joint savings

---

[1] Wife's earlier history is less detailed than Husband's, but it is worth noting that her native and primary language is also Spanish, and that she has no education beyond high school and few marketable job skills.

account with approximately $200, the accrued value of Husband's pension, a bank account used by Wife to hold the balance of her daughter's child support payments, a 1996 GMC Yukon sport utility vehicle, a 2002 Chevrolet Silverado, a 1994 Ford F-150 pickup truck, a 2003 Pontiac Grand Am, and an array of tangible personal property. The marriage produced no children, and all of the couple's children are emancipated adults.

On December 21, 2011, a hearing was held, during which there was a brief discussion between Wife, attorneys for both Wife and Husband, and the trial court regarding the use of an interpreter for Wife. As a result of that discussion, the attorneys and the court agreed to use leading questions for both Husband and Wife, rather than hiring interpreters for either party. All subsequent proceedings were conducted in the same fashion.

During the December 21 proceeding, Wife requested that the trial court consider only the value accrued by Husband's pension during coverture as marital property, despite the fact that there was a significant period of accrual before their marriage began. Wife initially asked for an unequal division of assets, but later rescinded that request, asking only for fifty percent of the marital assets, including the value of the home and the coverture fraction of the pension. She also requested an award for attorney fees and that her maiden name be restored to her. Finally, she testified that she had obtained work outside the home as a housekeeper earning approximately $16,536 per year and that she now lived in government-subsidized housing.

4

On December 22, 2011, Husband testified that the Tower Street residence, having been previously transferred to his daughter, Lisa, was never marital property.[2] Finally, he testified that he did not agree to responsibility for Wife's attorney fees.

At the conclusion of that day's proceedings, the Court ordered Husband to pay $1,000 in attorney fees to Wife's attorney on or before January 15, 2012.[3] The trial court also ordered Husband to answer all unanswered interrogatories. Hearings were held on April 23, 2012 and August 20, 2012. During these later proceedings, Wife's attorney entered into evidence an affidavit stating that attorney fees prior to the final days of proceedings came to $7,328. But, these accumulated fees did not include the attorney's preparation for or appearance at the final days of the trial.

On September 19, 2012, the trial court issued its decree of dissolution of marriage. In the decree, the court accepted the parties' stipulated division of personal property and their stipulated equalization sums. The court stated, among its factual findings, that it did not find Husband credible, and that the entirety of the vested pension and the value of the Tower Street residence were marital property for the purposes of division. The court ordered Husband to pay Wife's attorney fees in the amount of $8,000, with eight percent interest per year for any portion not paid by April 1, 2013. Additionally, the court

---

[2] On appeal, Husband does not contest that the Tower Street residence was marital property, but instead argues that the trial court should have divided the property unequally. Specifically, Husband contends that the trial court should have considered the fact that he owned the property outright before the marriage and that Wife was never listed on the deed to the residence. Thus, he argues that the only value of the home to be considered divisible equally is the appreciation value realized over the course of the marriage, $1,400.

[3] The court ordered this initial award of attorney fees in conjunction with a continuance after Wife's attorney indicated she had not received any payment for her services thus far and needed payment to conduct proper discovery.

awarded Wife fifty percent of the entirety of the Husband's vested pension and an additional percentage from the pension equal to $39,000 through a Qualified Domestic Relations Order with instructions to make Wife a surviving annuitant. The additional percentage was calculated and ordered as compensation for Wife's half of the assessed value of the Tower Street residence. Husband now appeals.

## I. Necessity of Interpreter

Husband first argues that the trial court was required to, but failed to make a determination of whether an interpreter was necessary in the proceedings, resulting in fundamental error. This court reviews a trial court's decision whether to appoint an interpreter for abuse of discretion. Nur v. State, 869 N.E.2d 472, 480 (Ind. Ct. App. 2007), trans. denied. An abuse of discretion occurs if a decision is against the logic of the facts and circumstances before the court. Id. However, where a party alleges for the first time on appeal that a court should have appointed an interpreter, the claim is reviewed for fundamental error. Id. A party's failure to object at trial results in waiver, unless error is fundamental, i.e. "a blatant violation of basic principles rendering the trial unfair." Davis v. State, 835 N.E.2d 1102, 1107 (Ind. Ct. App. 2005), trans denied. Although these standards have been developed in Indiana's criminal law, they are helpful in the application and interpretation of Indiana Code section 34-45-1-3 which establishes that parties and witnesses in civil cases are entitled to an interpreter.

Husband did not request an interpreter at any time during the proceedings, and also failed to object to the trial court's decision to forego an interpreter, agreeing instead to proceed through the use of leading questions by the attorneys representing both parties.

6

Because of Husband's failure to request an interpreter, this issue would ordinarily be waived, but we review the trial court's decision for fundamental error. See Nur, 680 N.E.2d at 480.

In Nur, we affirmed the trial court's decision not to appoint an interpreter for a defendant who failed to request an interpreter prior to conviction. Importantly, in that case, the defendant Nur mentioned that he had some difficulty understanding English and that Somali was his native language. However, in light of the fact that Nur was able to testify and provide responsive answers in English to questions posed in English by attorneys and the court, the court rejected his claim. Id. at 480-81. The Nur court held that "[t]he fact that a defendant is originally from a foreign country, or speaks, primarily, a native language other than English, does not automatically put the court on notice that the defendant may have a significant language difficulty." Id. at 481.

In this case, Husband indicated that Spanish was his first and primary language, despite the fact that he was born in the United States. On a few occasions, Husband was confused by questions during the proceedings. However, he never requested an interpreter, and his responses throughout the proceedings were responsive to the questions posed. Further, Husband was able to testify without apparent confusion about various banking and loan documents.

Husband's primary claim that the court was put on notice of the potential need for a translator stems from Wife's indication that she might need one. However, Wife's attorney, Husband's attorney, and the court agreed to allow leading questions for both parties instead of appointing an interpreter. At no point in the proceedings did Husband

7

request an interpreter or show significant language difficulty. It is well settled in Indiana that litigants may not invite error. Beeching v. Levee, 764 N.E.2d 669, 672 (Ind. Ct. App. 2002) (citing Crowl v. Berryhill, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997)). For all of these reasons, the trial court neither abused its discretion nor committed fundamental error when it followed the agreement of the parties' attorneys and did not appoint an interpreter for either.

## II. Appeal from Decree of Dissolution of Marriage

A. *Standard of Review*

With respect to Husband's appeals regarding the substance of the trial court's decree, this court reviews a trial court's findings and conclusions to determine if the findings are sufficient to support the judgment. Breeden v. Breeden, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997) (citing Vanderburgh County Board of Commissioners v. Rittenhouse, 575 N.E.2d 663, 665 (Ind. Ct. App. 1991), trans. denied). A trial court's judgment based on findings and conclusions requested by parties pursuant to Indiana Trial Rule 52(A), as in this case, are reversed only for clear error. Breeden 678 N.E.2d at 425 (citing DeHaan v. DeHaan, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), trans. denied). A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. Id. Findings of fact can also be found clearly erroneous, but only when the record lacks evidence or reasonable inferences from evidence that would support them. Id. We consider only evidence favorable to the judgment, and do not reweigh evidence or assess credibility of witnesses. Id.

B. *Division of Value of Marital Dwelling*

8

Husband argues that even though the Tower Street residence was rightfully considered part of the marital estate, the division of the value of the property was an abuse of the trial court's discretion. The trial court's valuation of property will be reviewed only for abuse of discretion. Breeden, 678 N.E.2d at 425 (citing Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996)). An abuse of discretion does not occur unless the record lacks sufficient evidence and reasonable inferences to support the valuation. Id. With respect to valuation, this court considers evidence only in the light most favorable to the judgment. Id.

The trial court valued the residence at its assessed value as of 2010, $78,000. Husband claims that Wife only has a claim to the appreciation in value realized over the period of the marriage. Husband states that the residence appreciated $1,400, which he supports by providing an affidavit of the value assessed in 1995, compared with the assessed value in 2010.

Husband's argument is best characterized as an attempt to rebut a presumption in favor of equal division of property as established in Indiana Code section 31-15-7-5. Husband asks this court to consider the contribution of Husband and Wife to the acquisition of the house, and the extent to which the property was acquired by both Husband and Wife. He contends that he owned the house for approximately thirteen years before the marriage, albeit with a mortgage for most of that time, and that he made his intentions clear that the residence was to go to his children. Husband argues that these facts are sufficient to rebut the trial court's presumption in favor of equal division.

9

While the disposition of marital assets is within the sound discretion of the trial court, the trial court must divide the property in a just and reasonable manner. Hatten v. Hatten, 825 N.E.2d 791, 794 (Ind. Ct. App. 2005), trans. denied. Under Indiana Code section 31-15-7-5, an equal division of property is presumed to be just and reasonable. Thus, "[w]hen a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." In re Marriage of Bartley, 712 N.E.2d 537, 542 (Ind. Ct. App. 1999).

An unequal of division of property may be justified when a party can demonstrate one or more of several factors including: contribution of each spouse to the property, the extent to which property was acquired by each spouse prior to the marriage, the economic circumstances of the spouses at the time of disposition of the property, the conduct of the parties during the marriage as related to dissipation, and earnings or earning ability of the parties. Ind. Code § 31-15-7-5. Husband claims that because the first two of these factors favor him, he deserves an unequal division of the value of the home in this case. However, it is well established that all marital property is subject to equal division, regardless of whether it was owned by either spouse prior to the marriage or accumulated by their joint efforts. Ind. Code § 31-15-7-4; Hill v. Hill, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007) (citing Beard v. Beard, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), trans. denied). Further, "[a]lthough the facts and reasonable inferences might allow for a

10

different conclusion, we will not substitute our judgment for the trial court." Akers v. Akers, 729 N.E.2d 1029, 1032 (Ind. Ct. App. 2000).

The trial court concluded that Husband's transfer of the Tower Street residence to his daughter for $1 was an attempt to dissipate marital assets. The fact that Husband continues to reside in the home following the transfer to his daughter supports that conclusion as well. Further, Wife's economic situation is far worse than Husband's, because she earns roughly one-third of his yearly income and now lives in government-subsidized housing. Wife is fifty-six years old, and has no savings and no pension. Finally, over the course of the fifteen-year marriage, Wife maintained the home, and helped Husband to undertake and complete remodeling projects in it.

The trial court's decision to value the marital property at its assessed value and to divide it equally is supported by the evidence and does not constitute clear error. We therefore affirm the trial court's equal division of the value of the marital dwelling. Furthermore, the award of half of the home's value as a percentage of the Husband's pension was appropriate since Husband plans to retire soon, reducing or eliminating his ability to satisfy the trial court's award to Wife as there are no other assets from which to obtain funds to satisfy the value.

C. *Division of Husband's Pension*

With respect to the trial court's division of the value of Husband's pension, Husband argues that the court erroneously rejected the parties' stipulation as to the value of the pension and wrongfully awarded Wife one-half of the full value of the pension, rather than a coverture fraction thereof. A coverture fraction uses as a numerator the

11

period of time during which the marriage existed while pension rights were accruing and as a denominator the total period of time during which the pension rights are accrued. In re the Marriage of Preston, 704 N.E.2d 1093, 1098-1099 (Ind. Ct. App. 1999). This formula takes into account the fact that the efforts of one spouse may be invested to aid another spouse in his or her ability to work and earn a pension. It also accounts for the fact that one spouse cannot be said to be contributing to the other spouse's acquisition of interest in a pension before the marriage.

Regardless of the source, all assets accumulated by the couple are subject to division upon dissolution of the marriage. Huber v. Huber, 586 N.E.2d 887, 889 (Ind. Ct. App. 1992), trans. denied (citing DeHaan v. DeHaan, 572 N.E.2d 1315, 1324-25 (Ind. Ct. App. 1991), reh. denied). Thus, division of a pension is generally within the trial court's discretion. While equal division is still the dominant presumption in division, either party may offer evidence that an equal division of an entire pension might be unreasonable. Huber, 586 N.E.2d at 889 (citing I.C. 31-1-11.5-11(c)). A trial court may use a coverture formula to achieve a just and reasonable award with respect to a pension, but is not required to do so. In re Marriage of Nickels, 834 N.E.2d 1091 (Ind. Ct. App. 2005).

Here, the trial court chose to award Wife a one-half interest in a pension that Husband had been accruing for twenty-five years prior to the marriage. Wife valued the pension only for the period of the marriage in her summary recapitulation and the division she requested of the court. The trial court also noted in its findings that the parties submitted a stipulated value equal to the pension's accrued valued during

12

coverture. Additionally, at trial, Wife agreed that she had no claim to any value accrued on the pension before the marriage. Nonetheless, the trial court disregarded the parties' stipulation as to the value of the pension and awarded her fifty-percent of the entire value thereof.

Although we understand the trial court's desire to do equity between the parties in its award of one-half of Husband's pension to Wife, Wife's limited claim and the parties' stipulation do not support this award, and the trial court abused its discretion when it awarded Wife a one-half interest in Husband's pension. We therefore reverse the trial court's award of one-half of Husband's pension to Wife and remand for further proceedings to award an amount consistent with the coverture fraction formula.

### III. Award of Attorney Fees

Husband also asks us to review the award of attorney fees in this case, claiming the trial court erred in awarding Wife $8,000 for attorney fees because it failed to consider a $1,000 award for attorney fees granted earlier in the proceedings and the amount exceeded an initial affidavit supporting the award of attorney fees submitted during the proceedings. Under Indiana Code section 31-15-10-1, the trial court may order a party to pay a reasonable amount for attorney's fees for another party.

An award of attorney fees will be disturbed on appeal only where the trial court has clearly abused its discretion. In re Marriage of Pulley, 652 N.E.2d 528, 532 (Ind. Ct. App. 1995), trans. denied. When considering and making such an award, a trial court should consider the parties' relative resources, earning ability, and employability. Balicki v. Balicki, 837 N.E.2d 532, 543 (Ind. Ct. App. 2005), trans. denied. Further, where

13

findings and conclusions are requested under Trial Rule 52, a trial court must make complete special findings sufficient to disclose a valid basis for the legal result. Maxwell v. Maxwell, 850 N.E.2d 969, 975 (Ind. Ct. App. 2006), trans. denied.

In this case, the trial court made the required findings, and those findings support the award. Wife testified that her attorney's fees were approximately $8,000, and her attorney's affidavit showed fees up to, but not including the final days of trial, totaling $7,328.30. Further, Husband's income of $45,000 to $60,000 per year far exceeds Wife's meager earnings of $16,536 per year as a housekeeper. Wife's resources only afford the opportunity to live in government-subsidized housing, and given her age, skills and education, there is little possibility that she will be able to increase her earning potential. Accordingly, we affirm the trial court's award of attorney fees in the amount of $8,000.

**Conclusion**

Husband has not established that the trial court erred when it accepted the parties' agreement to proceed without retaining an interpreter for either party. We affirm the trial court's order with respect to the award of one-half of the value of the home and attorney fees in the amount of $8,000 to Wife. However, the trial court abused its discretion when it divided the full value of Husband's pension between the parties, rather than dividing only the coverture portion of the pension as stipulated to by the parties. We therefore reverse and remand with instructions to correct the division of Husband's pension.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BAKER, J., and MAY, J., concur.