**Craig D. KELLER, Appellant (Respondent Below),**

v.

**Mary J. KELLER, Appellee (Petitioner Below).**

No. 02A04–9308–CV–285.

Court of Appeals of Indiana, Fourth District.

Aug. 30, 1994.

Transfer Denied Dec. 16, 1994.

---

3. I.C. 34–4–40–3(3).

4. Webster's New International Dictionary (3d ed. 1976).

Janet Seiwert Bell, Carol Bennett Rhodes, Burt, Blee, Dixon & Sutton, Fort Wayne, for appellant.

James M. More, Bloom, Bloom, More & Miller, Fort Wayne, for appellee.

CHEZEM, Judge.

### Case Summary

Appellant-respondent, Craig D. Keller ("Craig"), appeals the trial court's order dividing the marital property. We affirm.

### Issue

Craig presents one issue for review: whether the trial court's order dividing the marital property 28% ($14,365.04) to Craig and 72% ($36,852.06) to appellee-petitioner Mary J. Keller ("Mary") was just and reasonable.

### Facts

Mary and Craig were married in June of 1977. On July 9, 1981, Mary inherited a home on Ivy League Drive in Fort Wayne from her mother. The Ivy League property was deeded solely to Mary as provided in her mother's will. The inheritance taxes were paid out of the couple's joint checking account—into which both Mary, a counselor/teacher, and Craig, a carpenter, deposited their incomes. Other expenses for the Ivy League home—i.e., mortgage payments, real estate taxes, insurance, and repairs—were also paid from the joint checking account for the nearly six years they lived in the home.

On June 4, 1987, they sold the home, and Mary placed the proceeds from the sale ($29,946.77) into the couple's joint checking account. On June 5, 1987, they closed on the purchase of a house located on Hemlock Lane. The home cost $82,900 and they put down $32,791.64 in the form of a cashier's check (drawn from the joint checking account) naming both Mary and Craig as remitters. The Hemlock home was deeded to both Craig and Mary, as husband and wife. Over the years, the mortgage payments, insurance, and property taxes for the Hemlock home were all paid from the joint checking account. When the couple decided to divorce in October 1992, they sold the Hemlock property and placed its net proceeds—$27,428.82—in an escrow account at Standard Federal Bank. In addition, Craig deposited a check for $1,081.37—money remaining in the Hemlock home's escrow after the sale—into the Standard Federal escrow.

The trial court found that since Mary inherited the Ivy League home, "and because the funds from the inheritance are specifically traceable," it would deviate from the presumptive 50/50 split and award 93.7% of the Standard Federal escrow account to Mary ($25,700.15). The court awarded Craig 6.3% ($1,727.97) of the escrow account on its finding that this amount represented Craig's 50% share of the joint funds used to purchase the Hemlock property.

### Discussion and Decision

Craig contends the trial court erred in awarding Mary 72% of the marital estate. Essentially, he argues that the money attributable to Mary's inheritance should have been split equally between them, as was the rest of the marital estate. When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. *Van Riper v. Keim* (1982), Ind.App., 437 N.E.2d 130. We consider only that evidence most favorable to the trial court's disposition of the property. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, *trans. denied.* We will reverse only if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *In re Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176.

Marital property distributions are governed by Ind.Code § 31-1-11.5-11(c), which provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. *However, this presumption may be rebutted by a party who presents relevant evidence, in-*

cluding evidence of the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) *The extent to which the property was acquired by each spouse prior to the marriage or by inheritance or gift.*

(3) The economic circumstances of each spouse at the time of the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of the children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to the division of property and final determination of the property rights of the parties.

(Emphasis added).

 This provision imposes a presumption that an equal division of property is just and reasonable. *Castaneda v. Castaneda* (1993), Ind.App., 615 N.E.2d 467, 470. However, the presumption may be rebutted by presenting evidence supporting the factors listed in IC 31–1–11.5–11(c)(1)–(5). Where the trial court has determined that a party opposing an equal division has met his or her burden under the statute and the trial court adequately records its reasons based on the evidence for an unequal division, we will affirm the trial court's decision. *Id.*

Craig argues that the trial court did not consider the enumerated statutory factors in determining that an unequal property division was just and reasonable, but instead based that determination on a new factor: "traceability." Craig mischaracterizes the trial court's findings. The trial court specifically stated:

That because [Mary] inherited the real estate located at 3405 Ivy League Drive, and because the funds from the inheritance are specifically traceable, the court

*now deviates from the 50/50 distribution* as follows: [Mary] shall be entitled to 93.7% of the Standard Federal escrow account which represents twenty-seven thousand four hundred twenty-eight dollars and 12/100 ($27,428.12), plus any deposit made subsequent to the date of separation or interest earned during that period of time with [Craig] entitled to 6.3% of the aforementioned Standard Federal escrow account, which sum represents his 50% share of joint funds used to purchase the 5011 Hemlock Lane property.

R. 40 (emphasis added).

The trial court did not base its award of an unequal division of property on the traceability of an asset. Rather, the trial court used "traceability" as a tool to determine the extent to which some of the marital property was acquired through inheritance. Craig's argument that the trial court created a new factor for dividing marital property is without merit.

 Here, Mary presented evidence that she inherited the Ivy League property from her mother worth approximately $27,000.00, and that the value of the inheritance still existed in the "marital pot." This evidence, which is reflected in the trial court's findings, satisfies the factor listed in IC 31–1–11.5–11(c)(2), and serves to rebut the statutory presumption that a 50/50 split of the marital property is just and reasonable. The trial court's decision to award the proceeds from the sale of the Hemlock property to Mary is, therefore, justified and we cannot say that the trial court abused its discretion. *See Castaneda v. Castaneda* (1993), Ind.App., 615 N.E.2d 467 (where Wife inherited money, invested it in her name alone, and husband did nothing to contribute to accumulation of inherited funds, nor were inherited funds commingled with marital assets, court found these facts satisfied several factors outlined in I.C. 31–1–11–11.5(c) and justified awarding inherited funds to Wife); and *Shumaker v. Shumaker* (1990), Ind.App., 559 N.E.2d 315 (the fact that Husband acquired disputed properties before marriage, by inheritance, in addition to the fact that Wife made no contribution to the value or acquisition of the properties satisfied factors (1) and (2) found

in I.C. 31–1–11.5–11(c) and, therefore, justified unequal division of marital property).

Affirmed.

SULLIVAN, J., concurring.

STATON, J., dissenting with opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion because the judgment of the trial court is clearly against the logic and effect of the facts and circumstances presented in this divorce action. I would reverse the judgment of the trial court with instructions for an equal distribution of marital assets.

Absent a valid antenuptial agreement, all assets of divorcing spouses are part of the "marital pot" and are subject to division. *Huber v. Huber* (1992), Ind.App., 586 N.E.2d 887, 889, *trans. denied.* I.C. 31–1–11.5–11(c) provides for an equal division of assets in the marital pot, unless one spouse establishes by relevant evidence *that an equal division would not be just and reasonable.* Evidence of the existence of one of the specified *factors* for the court's consideration (e.g., acquisition by inheritance) does not, without more, satisfy the statutory criteria that a deviation from the presumed 50/50 split is appropriate only if an equal division would be *unjust or unreasonable.*

Here, the wife presented evidence that she inherited a residence 11 years before the parties' final separation. For approximately six years, the Kellers resided together in the inherited residence. Each spouse exerted efforts to maintain the home; joint funds were used to pay mortgage installments, taxes and insurance. The Kellers subsequently sold the inherited residence, deposited the proceeds into a joint checking account and purchased a second residence. Again, each spouse exerted efforts to maintain the home; joint funds were used to pay mortgage installments, taxes and insurance. The Kellers clearly commingled all their assets and efforts; their situation was directly opposite that of spouses where inherited property has been set aside to one spouse upon dissolution. *See Castaneda v. Castaneda* (1993), Ind.App., 615 N.E.2d 467, 470.

The trial court's decision is clearly against the logic and effect of the facts and circumstances before it. This court should reverse and remand for an equal distribution of the marital assets.