## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 11 2016, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| David W. Stone IV | Jerry T. Drook |
| Stone Law Office & Legal Research | Marion, Indiana |
| Anderson, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lora (McIlwain) Marshall, <br> *Appellant-Respondent,* <br><br> v. <br><br> Gregory McIlwain, <br> *Appellee-Petitioner.* | April 11, 2016 <br><br> Court of Appeals Case No. <br> 27A04-1509-DR-1388 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Jeffrey D. Todd, Judge <br><br> Trial Court Cause No. <br> 27D01-1310-DR-331 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent Lora Marshall ("Wife") and Appellee-Petitioner

Gregory McIlwain ("Husband") were married on May 2, 2009. On May 15,

2015, the trial court issued an order dissolving the parties' marriage, dividing the marital estate, and imposing $1500 in sanctions against Wife. Wife appeals from the trial court's subsequent denial of her motion to correct error challenging the trial court's division of marital assets and order imposing $1500 in sanctions against her, contending that the trial court abused its discretion in both regards. Concluding otherwise, we affirm.

## Facts and Procedural History

The parties were married on May 2, 2009. On October 24, 2013, Husband filed a petition seeking the dissolution of the parties' marriage. No children were born of the parties' marriage.

On September 3, 2014, after receiving a request for a restraining order from Wife, the trial court issued said order prohibiting either of the parties from encumbering, transferring, or otherwise disposing of marital assets. Shortly after the protective order was issued, Wife sought permission to sell her Chrysler Sebring. Husband did not consent to the sale. The trial court set a hearing on Wife's petition for October 31, 2014. This hearing, however, was later canceled. Wife subsequently sold a small commercial building located in Marion without first receiving Husband's consent or permission to do so by the trial court.

During the course of the proceedings, both parties made requests for discovery and both filed motions to compel. Both parties subsequently filed motions for

sanctions relating to the discovery issues. On January 23, 2015, following a hearing, the trial court issued an order denying Wife's request for sanctions, granting Husband's requests for sanctions, and ordering Wife to comply with all discovery requests by January 26, 2014.

[5] The trial court conducted an evidentiary hearing on March 12 and 30, 2015. On May 15, 2015, the trial court issued an order dissolving the parties' marriage, dividing the marital estate, and imposing a $1500 sanction against Wife. The trial court's order included findings of fact and conclusions thereon. In dividing the marital estate, the trial court found that an unequal distribution of the estate was warranted and divided the marital estate as follows:

| To Wife | | | | |
|---------|---|---|---|---|
| *Asset* | | | *Debt* | |
| Small Office Building | $17,638.00 | | VIA Credit Union (Sebring) | $6,715.89 |
| 2008 Chrysler Sebring | $6,018.00 | | Fedloan Servicing | $56,770.12 |
| Star Savings Account | $52,000.00 | | Sallie Mae | $9,761.58 |
| Trust Account with KHC | $86,536.57 | | Jared Taylor | $1,000.00 |
| VIA Checking Account | $148.75 | | Furniture Credit Card | $1,000.00 |
| Personal Property in her possession | $10,000.00 | | NCICA for Kennedy's Inc. | $2,052.00 |

|  |  |  | Deals Backyard Splash | $1,450.00 |
|---|---|---|---|---|
|  |  |  |  |  |
| **To Husband** |  |  |  |  |
| *Asset* |  |  | *Debt* |  |
| 3891 Frances Slocum Trail | $25,000.00 |  | Ford Credit | $22,426.80 |
| Lawson Road | $148,700.00 |  |  |  |
| 2013 Ford F-250 | $43,000.00 |  |  |  |
| 2003 Harley Davidson | $7,500.00 |  |  |  |
| 2000 Rinker Captiva Boat | $5,500.00 |  |  |  |
| ING (Voya) 401(k) | $53,275.16 |  |  |  |
| Beacon Savings xxx038 | $885.58 |  |  |  |
| Beacon Checking | $3,988.09 |  |  |  |

Appellant's App. pp. 11-12.

[6] On June 4, 2015, Wife filed a motion to correct error. Following a hearing on Wife's motion, the trial court granted the motion with respect to a misspelling of Wife's name. The trial court denied the motion in all other respects. This appeal follows.

# Discussion and Decision

On appeal, Wife contends that the trial court abused its discretion in dividing the parties' marital estate. Wife also contends that the evidence is insufficient to sustain trial court's sanction award.

## I. Whether the Trial Court Abused its Discretion in Dividing the Marital Estate

Wife argues that the trial court abused its discretion by ordering an unequal distribution of the marital estate.

> When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. *Keller v. Keller*, 639 N.E.2d 372, 373 (Ind. Ct. App. 1994), *trans. denied*. We consider only the evidence most favorable to the trial court's disposition of the property. *Id*. We will reverse only if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Id*.

*Capehart v. Capehart*, 705 N.E.2d 533, 536 (Ind. Ct. App. 1999), *trans. denied.*

In challenging the trial court's division of the marital estate, Wife claims that the trial court's findings and conclusions thereon are not supported by the evidence. Specifically, Wife complains that the trial court's findings regarding (1) a one-half interest that Husband has in some farmland, (2) the value of Husband's 401(k), and (3) whether Husband brought significant debt to the marriage are not supported by the evidence. For his part, Husband claims that the trial court's findings and conclusions thereon are, in fact, supported by the evidence.

When findings and conclusions thereon are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review. *Maloblocki v. Maloblocki*, 646 N.E.2d 358, 361 (Ind. Ct. App. 1995).

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Balicki v. Balicki*, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005) (quoting *Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001)), *trans. denied*.

Additionally, where a trial court has entered special findings at a party's request pursuant to Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998).

*Trabucco v. Trabucco*, 944 N.E.2d 544, 548-49 (Ind. Ct. App. 2011), *trans. denied*.

[10]     Indiana Code section 31-15-7-4(b) requires the trial court to divide marital property in a just and reasonable manner.

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> > (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> > (2) The extent to which the property was acquired by each spouse:
> > > (A) before the marriage; or
> > > (B) through inheritance or gift.
> > (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
> > (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
> > (5) The earnings or earning ability of the parties as related to:
> > > (A) a final division of property; and
> > >
> > > (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5. "Marital property includes property owned by either spouse prior to the marriage." *Capehart*, 705 N.E.2d at 536 (citing Ind. Code §

31-15-7-4(a)(1)).  "Marital property also includes both assets and liabilities."  *Id.* (citing *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind. Ct. App. 1993)).

## A.  Husband's One-Half Interest in Certain Farmland and Income Earned from Family Farming Operation

[11]  With respect to Husband's one-half interest in certain farmland, the trial court found as follows:

> 10.  The farm real estate on Lawson Road is jointly held in the name of Husband and his father.  This property was purchased in 2008, before the parties were even married.  Husband's father purchased the land and, intending it to be a gift, had the property titled jointly with Husband.  There is a mortgage on the property, but it is solely in the name of Husband's father and is paid by Husband's father.  Accordingly, Husband's one-half interest in the property is a marital asset, but the mortgage is not a marital debt.

Appellant's App. p. 9.  With regard to the farmland, the trial court concluded:

> 3.  The Court finds that Husband has demonstrated [ ] by a preponderance of the evidence an unequal distribution of the marital estate should be made in his favor.  Specifically, the Lawson Road farmland is the largest asset of the marriage, and was a gift to Husband prior to the marriage.…

Appellant's App. p. 11.

[12]  Wife claims on appeal that the evidence was insufficient to support the trial court's finding that Husband's one-half interest in the farmland was intended to be a gift from Husband's father.  In support, Wife asserts that Husband's father

did not testify during the evidentiary hearing, Husband indicated that his father purchased the land on his own because Husband had no collateral or cash reserve, and Wife, who was dating Husband at the time, handled some of the paperwork and put Husband's name on the deed in addition to Husband's father's name.

[13] With respect to the farmland at issue, the record demonstrates that neither Husband nor Wife made any financial contribution to the purchase of the farmland. Further, regardless of whether Husband's father or Wife actually listed Husband's name on the deed, nothing in the record even suggests that Husband's father objected to the inclusion of Husband's name on the deed or has attempted to remove Husband's name from the deed. Tax records prepared for the property for the 2014 calendar year indicate that as of 2014, both Husband and his father are listed as the deed holders of the property and the evidence demonstrates that as of the date of the final hearing, the farmland remained deeded to both Husband and Husband's father. In addition, while there is a mortgage attached to the farmland, this mortgage is solely in Husband's father's name and nothing in the record indicates that Husband's father requires Husband to make any financial contribution to the monthly mortgage payments. Based on this evidence, we conclude that it was reasonable for the trial court to infer from this evidence that Husband's father intended for Husband's one-half interest in the farmland to be a gift to Husband.

[14] Further, with respect to the parties' income, the trial court found as follows:

16. Wife is employed with MedExpress, and earns approximately $45,000.00 per year. She is also enrolled at Indiana Wesleyan University working toward a master's degree in nursing. Husband is employed through Holsum in Fort Wayne and earns approximately $52,000.00 per year. At times, Husband also earns nominal income doing work with his father on the family farming operations.

Appellant's App. p. 10. On appeal, Wife challenges the portion of the trial court's finding relating to the income Husband earns from the family farming operation. In challenging this finding, Wife alleges that Husband "is engaging in what could charitably be called 'creative bookkeeping' to reduce his income." Appellant's Br. p. 14. Wife also points to Husband's testimony that in a good year, he could potentially earn as much as $12,000 from the family farming operation, claiming that such a level of income could not be considered "nominal." Appellant's Br. p. 14.

[15] We note that review of the record does not indicate that Husband actually earned $12,000 from the family farming operation during any relevant time period, but rather that Husband testified that, in a good year, he could potentially earn as much as $12,000. Specifically, Husband testified that depending on a number of factors, for any given year, he could suffer a loss or earn somewhere between no income and $10,000 to $12,000. Husband reiterated that multiple factors beyond his control, including the weather and crop markets, impact the potential income he earns each year. Husband also testified that the depreciation of certain farming assets, including the truck he

uses for farming operations, can also factor into the calculation of any income earned from farming.

[16] Based on this evidence, we cannot say that the trial court's finding that "[a]t times, Husband also earns nominal income" from the family farming operations to be clearly erroneous. Despite Wife's claim, the record does not indicate that Husband actually earned $12,000 a year from farming, but rather that in a good year, he could potentially earn up to that amount. The record further indicates that in other years, Husband could earn no income or even suffer a loss. Considering the evidence most favorable to the trial court's disposition, we conclude that the trial court acted within its discretion with regards to its findings relating to the parties' income. *See generally Capehart*, 705 N.E.2d at 536 (providing that when reviewing a claim that the trial court improperly divided marital property, we consider only the evidence most favorable to the trial court's disposition of the parties' property). Furthermore, to the extent that Wife's challenge to the trial court's finding relating to Husband's potential income earned from farming amounts to an invitation for this court to reweigh the evidence, we must decline Wife's invitation. *See Trabucco*, 944 N.E.2d at 549 (providing that when reviewing the trial court's factual findings, we do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment).

## B. Husband's 401(k)

[17] The trial court found that Husband "brought into the marriage" a 401(k) "he had contributed to for sixteen (16) years[.]" Appellant's App. p. 9. The trial

court did not make any conclusion based on this finding beyond the conclusion that Husband brought "significantly more property into" the parties' marriage than did Wife. Appellant's App. p. 11. This conclusion was made considering not only the value of Husband's 401(k), but also the above-discussed farmland and other assets brought to the parties' marriage by Husband.

[18] At the time of the evidentiary hearing, Husband's 401(k) was valued at $53,275.16. Wife asserts that the trial court's finding that Husband had contributed to the 401(k) for sixteen years is not supported by the evidence. As such, she claims that the trial court abused its discretion in using Husband's pre-marital contributions to the 401(k) as a justification for an unequal distribution of the marital estate.

[19] The record demonstrates that as of March 12, 2015, Husband had worked for Lewis Bakeries for nearly twenty-one years. As part of Husband's employment, he had the opportunity to contribute to a 401(k). Husband testified that he began paying into the 401(k) "[a] couple of years before we got married." Tr. p. 37. Father testified that even though he had been employed by Lewis Bakeries for nearly twenty-one years, he did not begin investing in the 401(k) account at the time he first began working for Lewis Bakeries. While Husband could not pinpoint exactly when he began investing in the 401(k), he indicated that he began investing in the 401(k) "a long time ago." Tr. p. 38. Husband further testified that although a portion of the value of his 401(k) had accrued prior to the parties' marriage, the "vast majority" of the value had accrued during the parties' marriage. Tr. p. 38.

Our review of the record indicates that the evidence does not support the trial court's finding that Husband had been paying into the 401(k) for sixteen years. However, we cannot say that the related conclusion, *i.e.*, the conclusion that Husband brought significantly more property to the parties marriage than Wife, is not supported by the record and the other findings made by the trial court. The record demonstrates that Husband brought significantly more property into the parties' marriage than did Wife. Specifically, the record demonstrates that in addition to the above-discussed farmland and his 401(k), Husband brought the marital property, *i.e.*, the family farmstead on Frances Slocum Trail, to the parties' marriage. In addition, Wife does not contest the trial court's finding that while she brought approximately $80,000 in assets to the parties' marriage, these assets were off-set by approximately $30,000 in debt. As such, although we agree that the trial court's finding regarding the length of time that Husband had been paying into his 401(k) is not supported by the evidence, considering all of the assets brought to the marriage by Husband, we conclude that the trial court did not abuse its discretion in concluding that Husband brought significantly more property into the parties' marriage than did Wife.

## C. Husband's Debt

The trial court found that Husband brought "insubstantial debt" to the parties' marriage. In challenging the trial court's finding, Wife refers to a credit report for Husband that was apparently requested by Wife on February 9, 2009, approximately three months before the parties married. The record demonstrates that Husband had never seen the credit report before the

evidentiary hearing and that he had never given Wife permission to obtain his credit report. The record also demonstrates that the credit report was not admitted into evidence during the evidentiary hearing. Husband, however, was questioned during the evidentiary hearing about the contents of the credit report.

[22] During the evidentiary hearing, Husband was questioned about the following pre-marital debts:

| Identification of Debt | Balance |
|---|---|
| Auto Loan through Charles St. Community | $18,071 |
| Auto Lease through Chrysler Financial | $8687 total $542 monthly |
| Lawnmower Loan through Solidarity Federal Credit Union | $8269 |
| Unknown Loan through VIA Credit Union | $8062 |
| Student Loan through Nelnet | $6003 |
| Wife's Engagement Ring purchased from Osterman Jewelers | $3408 |
| Chase Credit Card | $1633 |

[23] With respect to the auto loan through Charles St. Community, Husband testified that the loan was actually his son's loan, on which he had merely co-signed. Nothing in the record suggests that Husband's son had ever failed to satisfy his obligation under this loan. Likewise, with respect to the student loan through Nelnet, Husband testified that this loan was actually his daughter's loan, on which he had merely co-signed. As was the case with his son, nothing in the record suggests that Husband's daughter had ever failed to satisfy her

obligation under this loan. Given the evidence indicating that Husband was not primarily responsible for either of these loans, coupled with the lack of evidence suggesting that either of his children had ever failed to satisfy their responsibilities under said loans, we cannot say that trial court abused its discretion in seemingly determining that neither of these loans amounted to a significant debt brought to the parties' marriage by Husband.

[24] With regard to the lawnmower loan, Husband testified that this loan was satisfied around the time of the parties' marriage. Further, Husband contested the unknown loan through VIA credit union, testifying that he did not recognize the debt and that he had not banked or conducted business at VIA Credit Union at any time prior to the parties' marriage. The trial court, acting as the trier-of-fact appears to have found Husband's testimony regarding the above-discussed loans to be credible. *See generally, McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996) (providing that the trier of fact is free to believe or disbelieve witnesses as it sees fit).

[25] With respect to the remaining loans, Husband does not challenge the assertion that he was leasing a Jeep through Chrysler Financial at the time of the parties' marriage, that he had a small amount of credit card debt, and that he had not yet satisfied the debt relating to Wife's engagement ring. However, given that balances on these debts that were presented by Wife were calculated approximately three months prior to the parties' marriage, it is not unreasonable for the trial court to find that Husband's level of indebtedness would have actually been lower at the time of the parties' marriage as he would

have been making monthly payments on these outstanding debts in the months between when the credit report indicating the balances was requested by Wife and the parties' marriage. As such, we cannot say that the trial court abused its discretion in finding that Husband did not bring significant debt to the parties' marriage.

## II. Sanctions Order

[26] Wife also challenges the trial court's order that she pay $1500 in sanctions for costs associated with Husband's efforts to compel discovery and what the trial court found to be a willful violation of the court's order restraining the sale of marital property. Specifically, Wife contends that the evidence is insufficient to support the trial court's sanctions order.[1] For his part, Husband argues that the evidence is sufficient to support the trial court's sanction order.

[27] A trial court generally possesses the inherent power to sanction both for discovery violations and for a willful violation of a court order. *See Allied Property & Cas. Ins. Co. v. Good*, 919 N.E.2d 144, 153-55 (Ind. Ct. App. 2009), *trans denied.* "'The only limitation on the trial court in determining an appropriate sanction is that the sanction must be just.'" *Prime Mortgage USA,*

---

[1] We note that in challenging the sufficiency of the evidence to support the sanctions order, Wife has failed to provide this court with a copy of the transcript relating to the January 23, 2015 hearing on Husband's motion for sanctions relating to his motion to compel discovery. To the extent that Wife's failure to provide us with the transcript hampers our review of the issue presented on appeal, we remind wife that she bore the duty to provide this court with an adequate record for review. *See Page v. Page*, 849 N.E.2d 769, 771 (Ind. Ct. App. 2006).

*Inc. v. Nichols*, 885 N.E.2d 628, 649 (Ind. Ct. App. 2008) (quoting *Bankmark of Fl., Inc. v. Star Fin. Card Servs., Inc.*, 679 N.E.2d 973, 978 (Ind. Ct. App. 1997)). With respect to a party's failure to comply with discovery requests, we observe that under Indiana Trial Rule 37(A),

> A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery[.]
>
> ****
>
> (4) *Award of expenses of motion*. If the motion is granted, the court shall, after opportunity for hearing, require the party … whose conduct necessitated the motion … to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

"We vest trial courts with wide discretion in dealing with discovery matters and will reverse a trial court's decision regarding discovery only for an abuse of discretion." *Nichols*, 885 N.E.2d at 648 (citing *Marshall v. Woodruff*, 631 N.E.2d 3, 5 (Ind. Ct. App. 1994)). We will find such an abuse "'only if it is clearly against the logic and circumstances before the court, or when the trial court has misinterpreted the law.'" *Id*. at 648-49 (quoting *Mallard's Pointe Condo. Ass'n v. L&L Investors Grp., LLC*, 859 N.E.2d 360, 364 (Ind. Ct. App. 2006), *trans. denied*). Further, with respect to a failure to comply with trial court orders, the Indiana Supreme Court has held as follows:

> When challenged on appeal, trial court sanctions for failure to comply with court orders are reviewed for an abuse of discretion.

*McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993). We presume that the trial court will "act in accord with what is fair and equitable in each case," and thus we will only reverse "if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *Id.* The conduct and equities will vary with each case, and we thus generally leave that determination to the sound discretion of the trial courts.

*Wright v. Miller*, 989 N.E.2d 324, 330 (Ind. 2013).

[28]  In ordering that Wife pay $1500 in sanctions, the trial court made the following factual findings:

> 11.  On July 28, 2014, Wife filed a Motion for Provisional Orders and Request for a Restraining Order prohibiting the parties from selling, encumbering, donating, giving or otherwise disposing of marital property. The Court granted Wife's request on September 3, 2014 and entered a joint and mutual restraining order as to the marital property.
>
> ****
>
> 13.  On November 26, 2014, Husband filed a Motion to Compel Production of Documents alleging that Wife refused to comply with discovery requests. The Court granted the Motion to Compel and ordered Wife to respond to discovery requests by December 8, 2014, at noon. Wife failed to timely comply with the Order Compelling Discovery, and on January 22, 2015, Husband filed a Motion for Sanctions. In response, Wife filed her own Motions for Sanctions. Both Motions were heard by the Court on January 23, 2015. Following arguments from counsel, the Court entered an Order on January 23, 2015, denying Wife's motion, but granting Husband's Motion for Sanctions.
>
> ****
>
> 15.  In violation of the Restraining Order entered September 3, 2014, Wife sold the commercial property located on 3rd Street in

Marion, Indiana, in December 2014. Neither Wife nor her counsel informed Husband or his counsel that an offer to purchase had been made or accepted on this property. In fact, Wife did not make Husband aware of the terms of the sale until the eve of the first day of the finagling hearing held on March 12, 2015. Evidence was presented that the commercial property had an assessed value of approximately $80,800.00, but the sale price accepted by Wife was only $25,000.00, and the net proceeds from the sale totaled $17,638.06.

Appellant's App. pp. 9-10. In light of these findings, the trial court concluded as follows:

> 6. As a consequence of willfully violating this Court's Restraining Order prohibiting the sale of marital assets during the pendency of this matter, and to compensate Husband for fees associated with obtaining discovery, Wife is ordered to pay Husband's attorney, Natalie Wasson, the sum of $1,500.00. Counsel for Wife is ordered to pay this sum directly from the trust account proceeds to Wife before making any distribution to Wife.

Appellant's App. p. 12.

[29] Wife argues that the trial court's sanction order is punitive as the evidence demonstrates that Husband's counsel only completed $352.50 worth of legal work associated with the motion to compel discovery. Thus, she asserts that the trial court's sanctions order should be reduced to $352.50. If the trial court's sanctions order only related to the discovery issue, this argument may have more merit. However, the trial court's sanctions order also included a sanction

for what the trial court found to be a willful violation of the restraining order by Wife.

[30] The trial court found that after requesting the order herself, Wife willfully violated the restraining order by selling a piece of marital property, *i.e.*, the commercial property located in Marion. A willful violation of a lawfully entered court order can amount to indirect contempt which may be sanctioned by the trial court. *See MacIntosh v. MacIntosh*, 749 N.E.2d 626, 629 (Ind. Ct. App. 2001), *trans. denied*. Such sanctions "may seek to both coerce behavior and to compensate an aggrieved party." *Id*. at 631. Wife does not challenge the sufficiency of the evidence to support the trial court's determination that she willfully violated the trial court's restraining order by selling the commercial building located in Marion. It appears that the trial court sanctioned Wife in an attempt to both compensate Husband for Wife's willful violation of the lawfully entered restraining order and to coerce Wife's compliance with future court orders.

[31] Given that the trial court's sanction order covered both discovery issues and a willful violation of the trial court's restraining order by Wife, we cannot say that the trial court abused its discretion in imposing $1500 in sanctions against Wife.

## Conclusion

[32] In sum, we conclude that the trial court acted within its discretion in dividing the marital estate and in imposing $1500 in sanctions against Wife.

The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.